(72 App. Div. 166.)

PEOPLE v. ADAMS.

(Supreme Court, Appellate Division, First Department. May 16, 1902.)

1. CRIMINAL LAW—ELECTION BETWEEN COUNTS OF INDICTMENT.
   The state need not elect on which count of an indictment charging rape in the first and second degrees, and assault in the second degree, it will go to the jury; there being evidence authorizing a conviction on either.[1]

2. RAPE—CORROBORATION.
   The corroborating testimony required to convict of rape need not include testimony of an eyewitness of the act itself, or extend to everything done or said.

Appeal from court of general sessions, New York county.

Harry Adams was convicted of rape, and from the judgment entered on the verdict, and from an order denying a motion in arrest of judgment, he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Stephen J. O'Hare, for appellant.
Howard S. Gans, Asst. Dist. Atty., for respondent.

HATCH, J. The indictment found against the defendant contained four counts,—the first, for rape in the first degree; the second, for assault in the second degree; the third, for rape in the second degree; and the fourth, for abduction. At the close of the trial the defendant moved that the district attorney elect under which counts of the indictment he would ask the jury to convict the defendant. The district attorney thereupon withdrew the fourth count of the indictment, charging abduction, and elected to go to the jury upon all of the other counts contained therein. The defendant asked that the district attorney be further compelled to elect upon which of the remaining counts he would go to the jury. The court refused to direct the district attorney to make such election, and the defendant excepted. Error is sought to be predicated thereon upon this appeal. The evidence given in the case tended to show the commission of an offense as charged in each of the remaining counts of the indictment, and the jury would have been authorized to convict the defendant of the offense charged in any one of such counts. The crimes as charged therein were consistent with each other, and are such crimes as are authorized to be charged in separate counts in the same indictment. Code Cr. Proc. § 279. And the jury is

[1] See Indictment and Information, vol. 27, Cent. Dig. § 438 [i], §§ 440, 443.

authorized to convict of the crime charged, or of any degree of the crime charged. Id. §§ 444, 445. As the evidence authorized a conviction of the defendant of any one of the crimes charged in the remaining counts of the indictment, or of any degree of crime involved in their commission, the court was right in refusing to compel the public prosecutor to elect upon which count he would ask to go to the jury. He had the right to go upon all. People v. Garner, 64 App. Div. 410, 72 N. Y. Supp. 66, affirmed on appeal in 169 N. Y. 585, 62 N. E. 1099.

The main contentions of the appellant upon this appeal consist in the claim that the verdict of the jury was against the weight of evidence, and that the prosecutrix was not corroborated upon all of the material elements constituting the crime of rape in the first degree, and that therefore the crime for which the defendant has been convicted was not established upon the trial. The prosecutrix was employed in a corset manufacturing concern at 145 Centre street, in the city of New York. On the morning of June 5, 1900, the prosecutrix, in company with Gussie Berkowitz, another girl employed at the same place, went to their place of employment, and, finding no work ready for them, started out to walk upon the street. The prosecutrix was a girl under 16 years of age, and her companion about 14. While together upon the street they met one Peter Pelligrini at the corner of Park Row and Baxter street. Pelligrini invited them to go to his club, in the basement of 17 Baxter street; and, after walking about for a short time, they consented to, and did, go with Pelligrini to this place. The prosecutrix testified, in substance, that when she entered the basement there were present the defendant and two other men, called "Buck" and "Banjo." The prosecutrix and her two companions seated themselves at a table, and, after being so seated, the defendant came and sat beside her, and winked to Pelligrini, who thereupon left the basement, going out upon the street. The defendant then made an indecent proposal to the prosecutrix, and subsequently put his hand under her clothes. She resisted, and tried to push him away. Thereupon the defendant called to Buck and Banjo to come and assist him, which they did. Gussie Berkowitz thereupon became frightened, and ran out upon the street. The defendant, with the assistance of Buck and Banjo, placed the prosecutrix upon some chairs; Buck and Banjo held her arms and legs; the defendant tore off her drawers and outraged her person; and such outrage was perpetrated by each one of the other two thereafter in succession; the others holding her arms and legs during the operation. The prosecutrix screamed and resisted, but was not able to prevent the assault upon her. After the assault had been consummated, the prosecutrix testified that a bartender from upstairs came down with a whip, and drove the defendant and the other boys out of the basement. The prosecutrix thereupon arranged her clothing, went out upon the street, and met the Berkowitz girl, but did not tell her what had happened, nor did she tell anybody thereafter of the commission of the offense until about a week after the occurrence, when her mother spoke to her about it, who, she claimed, had been informed by her sister;

and the prosecutrix was then taken to the Gerry Society, and was there examined by a physician, who testified that he found evidence of complete penetration of the person, and that about that time the prosecutrix made full disclosure of what had occurred. The prosecutrix testified that the reason why she did not make disclosure of what had occurred before was because she was afraid of her father and of punishment, and for that reason she did not go directly home after the occurrence, but·went to a woman's house in 95 Baxter street, where she remained for some time, and then went home, removed her drawers, which were torn and soiled with blood, and put them to soak, where her mother discovered them; that, upon discovery by her mother of the circumstances, the prosecutrix left her home, and went to the woman in Baxter street, carrying some underclothing with her; that she did this through fear of her father. This was, in substance, the testimony of the prosecutrix. Gussie Berkowitz testified to all of the circumstances in corroboration of the prosecutrix up to the time she left the basement, and further testified that she remained outside upon the street; that she heard the prosecutrix scream, and saw her when she came out, and asked her what they were doing to her downstairs; and that she said, "Oh, nothing." She identified the defendant as being one of the boys present in the basement. The mother of the complainant testified that her daughter was 15 years and 10 months old, that she saw the drawers which the prosecutrix wore on the 5th of June, that they were torn in two, that there was blood upon them, and that they were so mutilated as not to permit of being worn again, and she therefore burned them. The defendant was arrested by William H. King, an officer of the Society for the Prevention of Cruelty to Children, in company with an officer named Weitling. King testified that at the time of arrest he accused the defendant of having had connection with the prosecutrix. The defendant denied it, saying that on the night in question he was in the clubroom, 17 Baxter street; that Pelligrini came in with two girls; and that two fellows in the room, Buck and Banjo, had connection with the girl in his presence, but that he did not have connection with her. Weitling was not sworn. Pelligrini, Buck, and Banjo have run away, and their presence was not available upon the trial. This is, in substance, the testimony upon the part of the people. The defendant was sworn as a witness, and denied having been present in the clubroom, claimed that he had never before seen the prosecutrix until the time of the trial, and denied everything to which the prosecutrix testified as having occurred in the clubroom. He also denied the testimony given by the officer who arrested him, but states that he said to him at that time that, if Buck and Banjo did anything to her, he did not know of it, and was not present. The defendant's denial was complete and comprehensive. Myer, the employer of the prosecutrix, contradicted her testimony as to there being no work at the corset factory; he testifying that there was work upon the morning in question. The proprietor and bartender of the saloon above the basement were called, and testified that they did not drive anybody out of the basement with a whip.

Maria Carvello testified that she was a widow, and lived at 95 Baxter street; that the girl came to her house in June with Gussie Berkowitz, and remained for some time, and on a Saturday evening following she came with a bundle of soiled clothing to the house,. claimed that her mother had whipped and ill-treated her, and remained overnight. She undid her bundle of clothing, in which were a pair of drawers, which were soiled, and presented the ordinary evidence of menstruation. Three other witnesses were called, who· testified to the good character of the defendant. In all substantive respects, this constituted the evidence upon which the defendant asked exoneration.

We are clearly of the opinion that the testimony as thus developed: presented a question of fact for determination by the jury. A bare· recital of it shows that the prosecutrix, upon every essential element constituting the crime, was corroborated by other witnesses.. The corroboration was complete, both as to direct testimony and circumstances. Probably the weakest point in the case for the people· rested in the fact that the prosecutrix did not make immediate disclosure of the outrage that had been committed upon her person.. The offense is so grave, in the case of a virtuous female, that its· commission raises a natural presumption in the mind that at the first suitable opportunity she would make disclosure of it. The fact that she does not make it when opportunity is presented so to do· is a. strong circumstance against the integrity of the statement when the· disclosure is made for the first time ·long after the offense was committed. Under such circumstances, facts tending to exculpate a defendant are entitled to greater weight than would otherwise be accorded them. Such omission, however, to make immediate disclosure, is always to be considered in connection with the circumstances by which the prosecutrix is surrounded. If there be no one· in whom she can confide, or if her surroundings be such as to indicate that her silence upon the subject is produced by fear, it may furnish to the jury satisfactory reasons why the disclosure was not earlier made. People v. O'Sullivan, 104 N. Y. 481, 10 N. E. 880,. 58 Am. Rep. 530. In the present case the age of the prosecutrix is to be considered, her home surroundings, and fears of punishment at home if she disclosed that she voluntarily went to the place· where the offense was committed, which are all matters which tend' to show a reason why the disclosure was not earlier made. These· were all questions for the jury; and while the testimony was conflicting as to the main facts, and contradictions in collateral circumstances were many, yet it is clear that the jury were authorized in, finding the defendant guilty, and we see no reason why such conclusion should be disturbed.

It is further insisted that the court committed error in refusing to charge that the supporting evidence must tend to establish every material fact necessary to constitute the crime. The charge itself, as. a whole, embodied a perfectly correct statement of the law, and clearly presented for the consideration of the jury every salient fact in the· case, and the deductions to be drawn from the testimony offered by the defendant. It carefully guarded every legal right of which the·

defendant was possessed. Upon the facts thus presented, the court applied the rules of law applicable thereto in so clear a manner that the jury could not fail to understand the law of which they were to make application in considering the case, and which the case presented. Upon the particular subject which is now claimed to be error, the court, in the body of the charge, presented the question in such form as to give to the defendant no legal cause of complaint, and, at the special instance of counsel for the defendant, further charged "that where the law says a conviction shall not be had on the testimony of the complaining witness or the prosecutrix, unsupported by other evidence, it does not mean that her testimony as to the very act itself shall be supported by that of other persons as eyewitnesses of the act, because such acts are very seldom perpetrated in the presence of witnesses. It means that there must be other evidence in the case supporting her testimony, not as to every act done or everything said, but as to certain essential features of the crime charged, as testified to by her." This charge answered the requirements of the law, and was a correct statement of the law applicable to the case. People v. Plath, 100 N. Y. 590, 3 N. E. 790, 53 Am. Rep. 236. The court charged that the question of corroboration was one of law for the court, but that the sufficiency of the evidence in warranting a conviction was for the jury. The charge and the evidence in the case fully answered the rule of law announced and relied upon by the defendant in People v. Page, 162 N. Y. 272, 56 N. E. 750. There are no other questions raised in this case which require discussion.

It follows that the judgment of conviction should be affirmed. All concur.