The People of the State of New York, Respondent, *v.* Gerard Mussenden, Appellant.

Argued January 18, 1955; decided June 2, 1955.

*Jack B. Weinstein* for appellant. I. The court's error in requiring the jury either to find appellant guilty of attempted robbery in the first degree or to acquit him was highly prejudicial. II. Refusing to permit the jury to find defendants guilty of crimes less heinous than attempted robbery in the first degree was erroneous. (*People* v. *Cummings,* 274 N. Y. 336; *People* v. *Walsh,* 262 N. Y. 140; *People* v. *Van Norman,* 231 N. Y. 454; *People* v. *Miller,* 143 App. Div. 251, 202 N. Y. 618; *Murphy* v. *People,* 3 Hun 114; *People ex rel. Poulos* v. *McDonnell,* 302 N. Y. 89; *People* v. *Weiss,* 252 App. Div. 463, 276 N. Y. 384; *People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Harris,* 306 N. Y. 345; *People* v. *Rytel,* 284 N. Y. 242; *People* v. *Seiler,* 246 N. Y. 262; *People* v. *Ryan,* 263 N. Y. 298; *People* v. *Rizzo,* 246 N. Y. 334.) III. Refusing to instruct the jury with respect to all the crimes of which defendants might have been found guilty was highly prejudicial. (*People* v. *Rytel,* 284 N. Y. 242; *People* v. *Marendi,* 213 N. Y. 600.)

*Daniel V. Sullivan, District Attorney* (*John B. Lee, Walter E. Dillon* and *Louis Feldman* of counsel), for respondent. I. The court did not err in refusing to submit the lesser included crimes of attempted grand larceny in the first degree and assault in the second degree with intent to commit the crimes of robbery and larceny, because upon the facts of this case appellant was either guilty of attempted robbery in the first degree, as charged, or was entitled to an acquittal. (*People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Seiler,* 246 N. Y. 262; *People* v. *Chapman,* 224 N. Y. 463; *People* v. *Martone,* 256 N. Y. 395; *People* v. *Weiss,* 252 App. Div. 463; *People* v. *Meegan,* 104 N. Y. 529; *People* v. *Travis,* 172 App. Div. 959.) II. In view of the clear, convincing and uncontroverted evidence of guilt, the alleged error should be disregarded as unsubstantial and harmless. (*People* v. *Buchalter,* 289 N. Y. 181; *People* v. *Swersky,* 216 N. Y. 471; *People* v. *De Maio,* 243 N. Y. 588; *People* v. *Wagner,* 245 N. Y. 143; *People* v. *Crumble,* 286 N. Y. 24.)

FULD, J. Four defendants, including appellant Mussenden, were charged, in three separate counts of an indictment, with the crimes of attempted robbery in the first degree, attempted grand larceny in the first degree and assault in the second degree with intent to commit robbery and grand larceny. In brief, the

first count, of attempted robbery, alleged that the defendants, acting in concert, attempted to steal certain property from one James Gilligan by means of force and fear; the second count, of attempted larceny, recited that the defendants attempted to steal property from Gilligan's person; and the third count charged that the defendants assaulted their victim with intent to commit the crimes of robbery and grand larceny.

At the conclusion of the taking of the evidence, the trial judge submitted only the first count of attempted robbery, instructing the jury that its verdict was to be either guilty of that crime or not guilty. The defense took exception to the court's refusal to submit the " remaining counts in the indictment ", but gave no indication as to the theory or theories upon which it would like to have them considered by the jury. All of the defendants were found guilty on the submitted count of attempted robbery, and the ensuing judgment has been affirmed by the Appellate Division.

Sections 444 and 445 of the Code of Criminal Procedure provide, in substance, that the jury may find a defendant guilty of a crime of " any degree inferior " to, or " necessarily included " in, the crime " charged in the indictment."[1] While the case before us is not strictly within the terms of either of thos₄ statutes — since both of the offenses involved were charged in the indictment itself — it is plain that it must be governed by the same principles. If the crimes set out in the remaining counts are included in that of attempted robbery, the provisions of section 445 cannot be denied application, if otherwise applicable, merely because the prosecution chose to charge the included crimes as additional counts. The rights of an accused may not be made to depend on the happenstance of draftsmanship.

It has been repeatedly written that if, upon any view of the facts, a defendant could properly be found guilty of a lesser degree or an included crime, the trial judge must submit such

---

1. Section 444 reads, in part, as follows: "Upon an indictment for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto". And section 445 recites that, "In all other cases, the defendant may be found guilty of any crime, the commission of which is necessarily included in that with which he is charged in the indictment."

lower offense. (See, e.g., *People* v. *La Polte,* 253 N. Y. 573; *People* v. *Seiler,* 246 N. Y. 262; *People* v. *Van Norman,* 231 N. Y. 454; *People* v. *Thompson,* 198 N. Y. 396, 401; *People* v. *Schleiman,* 197 N. Y. 383; *People* v. *Meegan,* 104 N. Y. 529; *People* v. *McCallam,* 103 N. Y. 587; *Dedieu* v. *People,* 22 N. Y. 178, 185; *People* v. *Miller,* 143 App. Div. 251, 255–256, affd. 202 N. Y. 618; *People* v. *Adam,* 72 App. Div. 166, 167–168; *Murphy* v. *People,* 3 Hun 114; see, also, 1937 Report of N. Y. Law Revision Commission, p. 683 *et seq.*; N. Y. Legis. Doc., 1937, No. 65 [P], p. 169 *et seq.*) And it does not matter how strongly the evidence points to guilt of the crime charged in the indictment, or how unreasonable it would be, as a court may appraise the weight of the evidence, to acquit of that crime and convict of the less serious. (See, e.g., *People* v. *Seiler, supra,* 246 N. Y. 262, 267; *Murphy* v. *People, supra,* 3 Hun 114, 115; cf. *People* v. *Rytel,* 284 N. Y. 242, 245.) Consequently, although originally " intended merely to prevent the prosecution from failing where some element of the crime charged was not made out " (*People* v. *Murch,* 263 N. Y. 285, 291; see, also, *People* v. *Miller, supra,* 143 App. Div. 251, affd. 202 N. Y. 618), the doctrine, given expression in sections 444 and 445, redounds to the benefit of defendants as well, since its effect actually is to empower the jury " to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence ". (*People* v. *Rytel, supra,* 284 N. Y. 242, 245.)

That does not mean, however, that trial courts must instruct on lesser degrees or included crimes and submit them in every case, for it is recognized that this mercy-dispensing power is a thing apart from the true duty imposed upon a jury; that it is, rather, an inevitable consequence of the jury system. (See *People* v. *Rytel, supra,* 284 N. Y. 242, 245; *People* v. *Randazzo,* 127 App. Div. 824, 825.) As to the jury's proper function or duty, that consists solely of applying the legal definitions of crime, as laid down by the trial court, to the evidence and of convicting of the crime charged, if that is established beyond a reasonable doubt. (See *People* v. *Willson,* 109 N. Y. 345, 356–357; *Sparf* v. *United States,* 156 U. S. 51, 103; cf. *People* v. *Seiler, supra,* 246 N. Y. 262, 266; 1937 Report of N. Y. Law Revision Commission, *op. cit.,* pp. 689–690; N. Y. Legis. Doc., 1937, *op. cit.,* pp. 175–176.)

It follows, from what has been said, that, while the jury has the power to refuse to find any fact regardless of how clearly it may appear to a judge to have been proved, the jury does not, so to speak, have the right to find a fact and then refuse to render the verdict which such a finding necessarily requires. As is manifest, merciful or weak jurors may disregard even overwhelming proof of culpability and acquit entirely or convict of a lower crime than the evidence reflects. But that, it has been correctly observed, is " their responsibility and not the court's." (*People* v. *Randazzo, supra,* 127 App. Div. 824, 825.) There is probably no way to prevent or guard against this, but certainly a court should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict. Or, to express the matter in somewhat different terms, the jury's power to dispense mercy, by favoring the defendant despite the evidence, should not be allowed so to dominate the trial proceedings as to impede or interfere with the jury's primary fact-finding function.

The principle has, accordingly, evolved that the submission of a lesser degree or an included crime is justified only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one. (See, e.g., *People* v. *Moran,* 246 N. Y. 100, 102–103; *People* v. *Schleiman, supra,* 197 N. Y. 383, 390; *People* v. *Meegan, supra,* 104 N. Y. 529, 531; *Murphy* v. *People, supra,* 3 Hun 114, 115; see, also, *People* v. *Fiorenza,* 272 N. Y. 642.) The submission in such a case performs a function useful to the defendant and intelligible to the jury. The trial court may not, however, permit the jury to choose between the crime charged and some lesser offense where the evidence essential to support a verdict of guilt of the latter necessarily proves guilt of the greater crime as well. With the record in that state, there is no basis in the evidence for differentiating between the several offenses and no warrant for submitting any but that charged in the indictment.

Such is the case before us. The evidence offered on behalf of the People made out a clear case of attempted robbery; that adduced by defendants, a simple and cohesive defense which,

had it been accepted by the jury, would have resulted in their complete exoneration.

It was the testimony of Gilligan that, as he was walking along a quiet residential street in the Bronx at four o'clock one morning in May of 1951, an automobile, driven by appellant, passed and double parked some twenty feet beyond him. Three of the defendants got out of the car and came toward him, appellant remaining at the wheel. Arroyo, one of the defendants, asked him, "Is this house 64?" As Gilligan, after replying that he did not know, began to walk off, the other two defendants grasped him from behind and twisted his arms; one of them seized him around the throat. Arroyo "put" his hand in Gilligan's hip pocket and managed to get his wallet "half way out." As he was struggling, Gilligan managed to strike Arroyo and the wallet slipped back into the pocket. It was at that point that the police appeared.

The defense was a complete denial of any wrongdoing. Appellant did not take the stand, but the two defendants who did testified that they had been out drinking all evening and had stopped the car to ask Gilligan the location of "64 — 108th Street" — which, we note, was an address, many miles distant, where one of the defendants lived. According to their story, there was some language difficulty; Gilligan did not seem to understand them, acted "very surprised," became excited and began "to shout" and to "wave his arms." Both defendants denied that anyone touched Gilligan or that they intended to assault or steal from him, and appellant's pretrial statement was, in general, roughly consistent with this testimony.

Presumably, defendants' trial counsel presented this defense in good faith, in the hope that it would be accepted by the jury. It was in their then interest to have the trial judge place this theory before the jury in a succinct and understandable fashion, and that is precisely what he did. Now that the issue has been resolved against the defense, appellate counsel — who represents Mussenden by assignment of this court and who has undertaken his task with ability and imagination — may, with complete safety to appellant, speculate at length upon a whole series of hypotheses, each proceeding upon the premise that one or more of the defendants had deliberately lied in one or more material particulars. It is, of course, understandable why trial counsel

did not argue in that way upon the trial before the case was submitted to the jury. And we suspect that the defendants would have been quite dismayed, while the verdict was still in doubt, to have had the trial court divert attention from the exculpatory defense actually interposed by giving a series of instructions based upon the possibility of the defendants' perjury. We do not, of course, believe that trial counsel had this in mind when he made his *pro forma* objection to the failure to submit the " remaining counts," but that would have been the necessary consequence of any conscientious attempt by the court to meet that objection.

Be that as it may, however, the trial judge was fully justified in refusing to submit the count charging attempted grand larceny, since upon no view of the facts could appellant have been guilty of that crime, and yet not of attempted robbery. An attempt to commit larceny, as distinguished from an attempt to commit robbery, could here have been made out only by proof of an endeavor to steal from Gilligan's person *without the use of force or fear,* and the record cannot possibly be read to support such a finding. It was, as already noted, the defense position that no one of the defendants intended to steal and that no one of them attempted to remove the wallet. If that were so, then, neither appellant nor any other defendant could have been guilty of more than assault in the third degree — concerning which a word later. Contrariwise, if a theft had been attempted, but had represented the independent venture of one or more of the other defendants, appellant was either entirely innocent or, at most, guilty, again, of simple assault. And, on the assumption that he was fully involved with the others in whatever occurred, as testified to by Gilligan, any attempt to steal could only have amounted to attempted robbery, since force and fear were an integral part of the transaction. Nor is it of any consequence that the plan may have been, as urged by appellant, for one defendant to remove the wallet surreptitiously, and without Gilligan's knowledge, while he was engaged in defending himself against the others; the attempted offense is and remains robbery " when it appears that although the taking was fully completed without [the victim's] knowledge, such knowledge was prevented by the use of force or fear." (Penal Law, § 2123; see *People* v. *Glynn,* 54 Hun 332, 334, affd. 123 N. Y. 631; *Mahoney*

v. *People,* 3 Hun 202, affd. 59 N. Y. 659.) In the face of such record evidence, it is impossible to say that the alleged theft was attempted without the use of force or fear.

With regard to the remaining count in the indictment charging assault with intent to commit robbery and larceny (Penal Law, § 242, subd. 5), the court was likewise justified in denying the request to submit it, for the reason that it was not an offense " included " in the crime of attempted robbery. Such an assault is made up of precisely the same elements that constitute attempted robbery. If defendants attempted to rob Gilligan, they assaulted him with intent to steal; and, conversely, if they assaulted him with intent to steal, the act of necessity amounted to an attempted robbery. (See, e.g., *People* v. *Rizzo,* 246 N. Y. 334, 337–339.) Since, therefore, the same acts that spell out the one crime necessarily establish its twin, it would have been highly improper for the court to have submitted both of those counts with instructions that there might be a verdict of guilt as to one and of acquittal as to the other. In other words, had both counts been submitted, the only permissible verdict would have been guilty of both or innocent of both — the court being privileged, if there had been a conviction, to impose sentence under the highest count. (Penal Law, § 1938; see, e.g., *People* v. *Murphy,* 256 App. Div. 995, affd. *sub nom. People* v. *Goggin,* 281 N. Y. 611; *Matter of Zovick* v. *Eaton,* 259 App. Div. 585; *People ex rel. Thornwell* v. *Heacox,* 231 App. Div. 617.)[2]

And, for his final argument, appellant contends that the trial judge should also have submitted assault in the third degree (Penal Law, § 244), a crime not charged in the indictment. It may well be, as already intimated, that appellant could have been found guilty of that offense on the theory that he and his companions had merely intended to assault and beat Gilligan, but not to steal from him. We need not, though, concern ourselves with that possibility, since no request was made to submit that crime to the jury. (See *People* v. *Monat,* 200 N. Y. 308, 311–312; *People* v. *Thompson,* 41 N. Y. 1, 6–7; see, also, *People* v. *Cummins,* 209 N. Y. 283, 297–298.)

---

2. At one point — in an "additional" brief filed in the Appellate Division — the district attorney voiced the opinion that the evidence would have warranted the jury in finding appellant guilty solely on the assault count. The opinion as to the law is in no sense a concession binding on the courts, and, in the light of our analysis, the view expressed may not be accepted.

The trial judge's decision not to submit the indictment's larceny and assault counts was tantamount to a dismissal of those charges and, as already demonstrated, section 445 of the code did not require him to instruct upon the one or the other as a crime "included" in that of attempted robbery.

The judgment should be affirmed.

FROESSEL, J. (dissenting). This appellant and three others were indicted for three separate crimes: (1) attempted robbery in the first degree, (2) attempted grand larceny in the first degree, and (3) assault in the second degree with intent to commit the crimes of robbery and grand larceny, perpetrated in the nighttime of May 10, 1951 (at 4:00 A.M.).

It is undisputed that the defendants had been drinking considerably that night; this, the trial court charged, the jury may consider "if you wish". On the sentence, it might be noted, one of the defendants was committed to Bellevue Hospital "for a mental examination". It is also undisputed that appellant remained in the automobile, while the other three defendants approached complainant Gilligan and asked: "Is this house here 64?" Two of them lived at 64 — 108th Street. There is ample evidence that the three defendants other than appellant assaulted Gilligan. Whether or not there was attempted robbery or grand larceny is not so clear. In this respect, the jury might well have found that complainant's testimony in the Magistrate's Court conflicted with his testimony at the trial, thus affecting his credibility. The police, who claim to have observed much of what happened, saw the three defendants assaulting Gilligan, but did not corroborate the latter's trial testimony as to the attempt to extract the wallet from his pocket. Gilligan conceded that no threat and no demand for money was made.

After a lengthy trial, the court submitted to the jury only the crime of attempted robbery, without dismissing the other counts. In our judgment, this was error, and contrary to a settled practice that has prevailed in our criminal courts for a great many years. Counsel for defendants duly, clearly and unequivocally excepted.

We disagree with the conclusion of the majority that the crime of assault, second degree (here, assault with intent to rob and steal), is identical with the attempted robbery charge. In

our view, the assault and grand larceny charges are lesser crimes included in the *attempted* robbery charge, within the meaning of section 445 of the Code of Criminal Procedure.

Reduced to its simplest terms, and leaving out all elements not here pertinent, attempted robbery embraces (1) an attempted "unlawful taking" [attempted grand larceny] (2) "by force" [assault]. Without the force or assault, we have merely attempted grand larceny. Without an attempted unlawful taking, we have only assault [with intent].

Thus, upon the whole case, the jury would have been clearly warranted in convicting defendants of assault with *intent* to commit robbery. This, however, is not necessarily tantamount to an *attempt* to commit robbery. "Attempt to commit a crime" is defined in section 2 of the Penal Law thus: "An act, done with intent to commit a crime, *and* tending but failing to effect its commission" (emphasis supplied). It necessarily follows that more than mere "intent" to commit a crime is necessary to constitute an "attempt" to do so (*People* v. *Rizzo,* 246 N. Y. 334; *People* v. *Werblow,* 241 N. Y. 55; *People* v. *Sullivan,* 173 N. Y. 122; *People* v. *Ditchik,* 288 N. Y. 95; *People* v. *Kane,* 161 N. Y. 380, 389; *People* v. *Conrad,* 102 App. Div. 566, affd. 182 N. Y. 529).

Since there is a difference between intent and attempt, its resolution was for the jury, which could conceivably have found, on this record, that the defendants assaulted Gilligan with "intent" to rob him, but that since their acts did not "carry the project forward within dangerous proximity to the criminal end to be attained" (*People* v. *Werblow, supra,* 241 N. Y., at p. 61), they did not reach the stage of an "attempt" to *rob.* Indeed, the District Attorney, on appellant's motion for reargument in the Appellate Division, frankly "conceded that the evidence would have warranted the jury in finding the defendant guilty solely on the Assault count, if they had been permitted by the trial court to render such a verdict". However, the Appellate Division erroneously held that "here there was no possible view of the facts that would justify any other verdict except a conviction or acquittal of attempted robbery, first degree".

The jury was not obliged to believe all that Gilligan said. Their power of rejection is exceedingly broad. In *People* v.

*Rytel* (284 N. Y. 242, 245) Chief Judge Lehman, writing for the court, said: " The power of a jury in a criminal case to reject, though unreasonably, evidence which is uncontradicted and unimpeached, and to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence, cannot be challenged in an appellate court." (See, also, *People* v. *Seiler*, 246 N. Y. 262, 267.) Every essential element of a crime presents a question of fact for the jury. " No matter how conclusive the evidence  *  *  *  and assuming that it was wholly uncontradicted and that the inferences all pointed one way, each of the three fundamental facts was for the jury to pass upon, for if the court could take away one from them it could take away all, and thus direct a verdict, which is never allowed in a criminal case." (*People* v. *Walker*, 198 N. Y. 329, 334.) (Code Crim. Pro., §§ 419, 420.) And, as noted by the majority, we have repeatedly held that if, upon any aspect of the facts, a defendant may properly be found guilty of an included crime, the trial judge must submit such lesser offense, no matter how strongly the evidence points to guilt as to the greater offense.

Consequently, the trial court should have granted appellant's request to charge on assault, second degree, as well as attempted grand larceny in the first degree. His stated reason for charging attempted robbery only was " in order that you may deliberate upon this [case] more easily ". A jury's duty may not be made easier by prejudicing a defendant's rights. By this rather unusual ruling, he unwittingly made the jury's path easy to conviction for the only crime submitted to them. He also instructed them that it is for them " to determine what is the truth in this case; what is *possible*; what is likely "; he later charged that the law " has placed in your hands as jurors in a criminal case the *exclusive* right to determine the innocence or guilt of the defendants on trial " (emphasis supplied). Yet, because he was convinced of the defendants' guilt of attempted robbery, he declined to permit them to pass on the lesser included crimes. Moreover, had the request as to the assault count been granted, a further charge would then have been required on assault, third degree (simple assault), which offense, even the majority concede, should have been charged here if appellant's attorney had requested it.

A realistic view of the situation created by the trial court's refusal to charge all three counts, thereby requiring the jury either to convict of attempted robbery, first degree, or to acquit, compels us to conclude that the rights of this defendant, who never left the automobile in which he was sitting, were seriously prejudiced. Although the jury might have had doubts as to his guilt of the attempted robbery charge, their reluctance to acquit him altogether may nevertheless have led to an improper conviction.

The Appellate Division, by BASTOW, J., who granted permission to appeal, held that while the trial court should have made a clearcut disposition of the matter, " the refusal to submit the two counts did not constitute *reversible* error ", and that " the *substantial* rights of the appellant were not affected " (emphasis supplied). The District Attorney asks us to affirm under section 542 of the Code of Criminal Procedure. In our view, substantial and reversible error was committed, which may not be overlooked.

The judgment appealed from should be reversed and a new trial ordered.

DESMOND, DYE and VAN VOORHIS, JJ., concur with FULD, J.; FROESSEL, J., dissents in an opinion in which CONWAY, Ch. J., and BURKE, J., concur.

Judgment affirmed.