THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JAMES RICHARDSON, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS CROOM, Appellant.

Fourth Department, February 18, 1971.

26

*Nathaniel A. Barrell* (*Morton Bornstein* of counsel), for appellant.

*Michael F. Dillon, District Attorney* (*Judith B. Manzella* of counsel), for respondent.

GOLDMAN, P. J.  In these cases arising out of the robbery and assault of a cab driver on November 2, 1969 defendant Richardson appeals on the grounds that (1) he was not properly represented by counsel at the lineup and accordingly any in-court identification was vitiated by this lack of counsel and (2) both defendants appeal on the ground that submission to the jury of the assault count in the indictment was improper, for it was includable in the robbery counts.  Defendants were convicted of three counts of robbery in the second degree, one count of grand larceny in the third degree, one count of assault in the third degree, one count of unauthorized use of a vehicle and petit larceny.  At the time of sentencing the court on its own motion dismissed the grand larceny and petit larceny counts against both defendants because those crimes merged in the robbery charged under counts one, two and three.  Defendant Richardson was sentenced under the remaining five counts to serve a reformatory term on each count, the terms to run concurrently, and defendant Croom was sentenced to terms not to exceed 15 years under the robbery counts and to a one-year penitentiary term for assault and unauthorized use of the vehicle, all to run concurrently.

At the request of defendants a *Wade* hearing was held prior to trial.  The complainant cab driver testified that he first saw defendants in front of a Greyhound Bus terminal where there "was plenty of light".  Defendants said they wanted a cab and Richardson got into the front seat and Croom sat in the rear seat.  The driver observed that Croom was wearing a three-quarter brown leather jacket and Richardson had on yellow pants.  Complainant conversed with defendants for 10 minutes until they reached the address designated by defendants. After complainant stopped at the curb Croom grabbed him by the neck, told him it was a stick-up, demanded " all you got " and told the driver they were going to kill him.  Richardson held a gun against complainant and threatened to " blow a hole " in him.  Defendants then pushed the victim from the

driver's seat, took control of the vehicle and drove it for a considerable period of time, during which complainant had ample opportunity to observe defendants. He noted with considerable detail the outer garments worn by defendants, the degree of color of their skin, a scar on Croom's right jaw, high cheek bones of Richardson, and other positive physical characteristics. Finally, defendants struck complainant on the head, tore his shirt off him, removed his shoes, tied his hands and feet, dragged him out of his cab, left him on the ground and drove away. After freeing himself, complainant at the police station was shown three groups of approximately 90 photographs and in the second and third groups positively identified both defendants.

Complainant later attended two lineups at police headquarters. He identified Croom in the second lineup but could not positively identify Richardson. A few days later there were two more lineups and complainant identified Richardson in both of these. At both of the lineups there were two attorneys present, one of whom indicated that he represented Croom and objected to the lineups, and the second attorney neither indicated that he represented Richardson nor made any objection to the lineup procedure. It is unclear from the record as to whether the second attorney represented anyone in particular. At the *Wade* hearing and at the trial complainant was positive in his identification of both defendants.

Defendant Richardson's contention that he was not represented by counsel at the lineup and accordingly the in-court identification is illegal under the requirements of *United States* v. *Wade* (388 U. S. 218) is without merit. If the in-court identification did not arise from a lineup procedure " so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification ", the in-court identification was properly admitted, and we so hold (*Simmons* v. *United States,* 390 U. S. 377, 384). Applying the test expressed in *Johnson* v. *New Jersey* (384 U. S. 719, 729) that " We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial ", we have no doubt or reservation about the fairness of the identification of defendants. The record explicitly shows that there was ample opportunity for the victim to identify both defendants during the commission of the crime and, further, the in-court identification was not tainted by the pretrial identification procedures. The proof was clear and convincing that the pretrial confrontation was not sug-

gestive and that the complainant could identify defendants independently of the pretrial photograph identification and the lineup observation. Implicit in the jury verdict is also a finding that the in-court identification was based upon the victim's observations for more than 35 minutes made at the time of the robbery. As was said in *People* v. *Ganci* (27 N Y 2d 418, 429) : " the extent to which the lineup, the photographs and in-court presence of defendant on the preliminary examination affected the memory of these two witnesses, who said they could identify defendant, is a question of fact in which the finding has gone against defendant. The witnesses have certainly not been disabled as a matter of law and there is no good ground to reverse here under the cases (*People* v. *Gonzalez,* 27 N Y 2d 53; *People* v. *Logan,* 25 N Y 2d 184; *People* v. *Rivera,* 22 N Y 2d 453; *People* v. *Brown,* 20 N Y 2d 238).''

Defendants' second ground for reversal, that the submission to the jury of the assault count was improper because it was includable in the robbery count, is equally without merit, notwithstanding the concession in the People's brief that " under these circumstances, respondent concedes that the conviction for Assault in the Third Degree should have been dismissed after a verdict was returned finding the defendants guilty of Robbery in the Second Degree ''. Regrettably, a somewhat similar concession in *People* v. *Ricks* and *People* v. *Kelly* (35 A D 2d 775, 776) was adopted by this court. The acceptance of the concession in that case, and the consequent modification of the judgment, in no way affected the sentence, but, nevertheless, it should have been rejected and the judgment should have been affirmed. A trial court commits no error when it fails to charge a jury, as in *Ricks* and *Kelly* (*supra*) that if they should find a defendant guilty of a higher degree of a crime they should not also then find defendant guilty of a lesser included crime or offense.

It is clear that if separate and distinct acts are committed which violate more than one section of the Penal Law, punishment for each is proper although all the convictions arise out of a single transaction (*People ex rel. Maurer* v. *Jackson,* 2 N Y 2d 259, 264). Section 279 of the Code of Criminal Procedure (CCP) authorizes the joinder in one indictment of all charges arising out of a single transaction, despite the fact that different penalties may be imposed for conviction upon the several crimes charged. Furthermore, after the commencement of the trial, the People are not required to elect between the various counts of an indictment (CCP, § 279-a).

When a multiple count indictment is brought against a defendant, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit a crime (CCP, § 444). Similarly, a defendant may be found guilty of any crime, the commission of which is necessarily included in that crime with which he is charged in the indictment (CCP, § 445). The requirement that the court charge the substance of the lesser included offenses or lower degrees of a crime is a statutory mandate (Dowsey, Charges to the Jury and Requests to Charge in a Criminal Case, Part 1, § 15, pp. 1–19). " Although originally ' intended merely to prevent the prosecution from failing where some element of the crime charged was not made out ' (*People* v. *Murch*, 263 N. Y. 285, 291; see, also, *People* v. *Miller, supra,* 143 App. Div. 251, affd. 202 N. Y. 618), the doctrine, given expression in sections 444 and 445, redounds to the benefit of defendants as well, since its effect actually is to empower the jury ' to extend mercy to an accused by finding a lesser degree of crime than is established by the evidence '. (*People* v. *Rytel, supra,* 284 N. Y. 242, 245. *People* v. *Mussenden,* 308 N. Y. 558, 562.) " Accordingly, the rule has evolved that if, upon any view of the facts, a defendant could properly be found guilty of a lesser crime or an included crime, the Trial Judge must submit such lower offense to the jury. for its consideration, no matter how strongly the evidence points to guilt of the crime charged in the indictment, or how unreasonable it would be, as a court might appraise the weight of the evidence, to acquit of that crime and convict of the lesser crime or offense (*People* v. *Mussenden, supra,* pp. 561–562; see, also, *People* v. *Asan,* 22 N Y 2d 526, 529–530; *People* v. *Malave,* 21 N Y 2d 26).

This, of course, does not mean that the trial court in every case must instruct on lower degrees or lesser included crimes. It must do so only where there is some basis in the evidence for finding the accused innocent of the higher crime, and yet guilty of the lower one (*People* v. *Mussenden, supra,* p. 563). It is the exceptional case, however, where the refusal to instruct the jury as to lower crimes is warranted. Only where there is no possible view of the facts by which the jury could find a lesser degree is such refusal justified (*People* v. *Malave, supra*). " A classic statement of the standard to warrant a refusal to submit lesser degrees or included crimes is that ' every possible hypothesis ' but the higher crime be excluded " (*People* v. *Asan, supra,* p. 530). It has been held, however, that it is not necessary for a trial court to charge lesser degrees of a crime when no

request to so charge is made (*People* v. *Lawhorn,* 32 A D 2d 975).

The only real limitation on the charging and conviction of a defendant for lower degrees of a crime or lesser included offenses is in the area of sentencing. Subdivision 2 of section 70.25 of the Penal Law provides: "When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences must run concurrently." This rule is the same as the one enunciated in section 1938 of the former Penal Law as construed by the Court of Appeals in *People ex rel. Maurer* v. *Jackson* (2 N Y 2d 259, *supra*). (See Practice Commentary, McKinney's Cons. Laws of N. Y., Book 39, Penal Law, § 70.25, p. 134.)

Section 70.25 of the Penal Law (and its forerunner, Penal Law, § 1938) was designed to prohibit double punishment for an act or omission which was violative of more than one section of the law and accordingly punishable in different ways. The statute, however, does not prohibit multiple convictions or concurrent sentences as such, only double punishment (*People ex rel. Maurer* v. *Jackson, supra,* p. 268). The Court of Appeals in *Maurer* (*supra*) expressly held that when a shorter sentence for a conviction of a lesser included crime runs concurrently with the longer sentence for the higher degree crime, there is, in effect, no punishment for the lesser included crime. (*Id.,* p. 268.) The court gave as another reason for upholding multiple convictions and concurrent sentences the following (p. 269): "Where a criminal act which is a composite of several included offenses is followed by a multiple count indictment, and convictions are obtained on more than one count, the imposition of concurrent sentences for lesser included offenses insures that the defendant will not go unpunished if there is an error in his conviction for the highest degree of offense resulting in an acquittal as to that count." Accordingly, the standard sentencing procedure in a multiple count indictment and conviction arising out of a single transaction is to pass judgment on the count charging the highest grade of offense and then to pass judgment on the lesser offenses, sentences to run concurrently (*People ex rel. Maurer* v. *Jackson, supra*; *People* v. *Florio,* 301 N. Y. 46, 54). Other examples where the procedure has been upheld include: *People* v. *Gonzalez* (27 N Y 2d 53) [conviction and concurrent sentences for robbery, first; grand larceny, first; assault, second, and assault, third, affirmed] and

*People* v. *Rivera* (22 N Y 2d 453) [convictions and concurrent sentences for robbery, first; assault, first; assault, second, and possession of a dangerous weapon, affirmed].

In the appeal before us the fact that the underlying assault formed an element of the robbery count did not foreclose the trial court from charging and sentencing on the assault count, so long as the sentences for each were made to run concurrently.

Accordingly, the judgments appealed from should be affirmed.

MARSH, WITMER, GABRIELLI and MOULE, JJ., concur.

Judgments unanimously affirmed.