MEMORANDUM.
***954 *766 The order of the Appellate Division should be affirmed. Defendant was alleged to have unlawfully possessed both a BB gun and a Taurus firearm, but his conviction of third-degree criminal possession of a weapon involves only the Taurus firearm. The trial court did not abuse its discretion by dismissing the non-inclusory charge of unlawful possession of an air pistol or rifle which related to the BB gun (see People v. Leon, 7 N.Y.3d 109, 113, 817 N.Y.S.2d 619, 850 N.E.2d 666 [2006] ; CPL 300.40 [6 ] [a] ). The jury was free to credit defendant's theory that he possessed the BB gun but not ***955 the Taurus firearm that was also recovered in his vicinity-which was the subject of separate weapon possession counts. Contrary to defendant's contention, his defense that he never possessed the Taurus firearm was not removed from consideration when the trial court dismissed the charge related to the BB gun, nor did defendant argue in the trial court that the dismissal of the BB gun count impaired his constitutional right to present a defense.
We also reject as without merit defendant's claim that the trial court denied him a meaningful opportunity to present a complete defense insofar as it did not allow him to submit evidence of the arrest of Steve Ramsanany-an individual who inculpated himself and later recanted-inasmuch as defendant was permitted to pursue his chosen third-party culpability defense, and the trial court did not abuse its discretion as a matter of law by refusing to admit facts concerning Ramsanany's arrest into evidence (see People v. Frumusa, 29 N.Y.3d 364, 372, 57 N.Y.S.3d 103, 79 N.E.3d 495 [2017] ). To the extent defendant contends that the trial court improperly admitted evidence of Ramsanany's recantation, that argument was not preserved for our review.
Defendant's contention that the People shifted the burden of proof during summation is unavailing. In light of the trial court's immediate curative measure, the People's remark did not constitute a pervasive pattern of prosecutorial misconduct so as to deprive defendant of a fair trial (see People v. Galloway, 54 N.Y.2d 396, 399, 446 N.Y.S.2d 9, 430 N.E.2d 885 [1981] ). Defendant's remaining claims of prosecutorial misconduct are unpreserved. Finally, with regard to his claim of ineffective assistance of counsel, defendant has failed to "demonstrate the absence of strategic or other legitimate explanations for counsel's alleged shortcomings" ( People v. Honghirun, 29 N.Y.3d 284, 289, 56 N.Y.S.3d 275, 78 N.E.3d 804 [2017] [internal quotation marks and citation omitted] ).
RIVERA, J. (dissenting).
The trial court abused its discretion when it did not submit the unlawful possession of an air pistol count to the jury and submitted instead only the more serious counts relating to the possession of a handgun. This error allowed the jury to consider highly prejudicial testimony completely irrelevant to the counts submitted, including defendant's admission of guilt to the possession of the air pistol. So doing, the trial court encouraged reverse jury nullification and provoked confusion in the jury's deliberative process. Notwithstanding this error, the Appellate Division affirmed defendant's conviction based on a misapplication of our law on lesser included offenses and jury nullification. Contrary to the ***956 views of my colleagues, the Appellate Division's analysis should be rejected and its order reversed.
I.
Defendant was charged with several counts related to the unlawful possession of a 9 millimeter semiautomatic handgun *767 and an air pistol-commonly referred to as a BB gun.[1] At trial, the People's case turned on the testimony of one of the arresting officers, who explained that he was riding with his partner in an unmarked police car at night when he observed defendant holding a gun in each hand. As the car approached defendant, the officer saw him make a throwing motion under a parked van and walk away. The officer testified that while he did not see defendant throw the guns, he heard "two clinks hitting the ground." The officers exited the car, arrested defendant, and found a handgun and an air pistol under the van. Neither weapon was tested for DNA or fingerprints.
Defendant conceded that he possessed the air pistol but disputed his possession of the handgun. As a defense, he argued that the gun actually belonged to a person named Steve Ramsanany, and that it was him, and not defendant, who had thrown the gun under the van. To support that claim, the defendant hired a retired New York Police Department detective to interview Ramsanany. The detective warned Ramsanany that admitting to possessing the handgun could result in his arrest, but Ramsanany proceeded with the interview anyway. Ramsanany affirmed that, on the night in question, he had been present at a nearby dice game where he got into an altercation, during which another player slapped him. At that point, he left the game and returned with the handgun. When he saw an unmarked police car approach, he threw the handgun under the van. Ramsanany also said that he saw defendant throw a BB gun under the same van. The detective prepared a written statement memorializing Ramsanany's various affirmations, which Ramsanany signed. At trial, defendant introduced testimony from another witness present at the dice game that was consistent with Ramsanany's account. When the police detectives interviewed Ramsanany, he allegedly ***957 recanted his statement and claimed that the defendant had pressured him to lie. All this evidence, including, in particular, Ramsanany's statement and alleged recantation, was submitted to the jury, since Ramsanany himself was not available to testify, as he was in federal custody at the time for allegedly attempting to sell an AK-47 to undercover officers.
Even though a central part of the People's case-in-chief was intended to establish defendant's possession of the air pistol, and defendant admitted possession, the People nevertheless moved to dismiss the air pistol count once all the evidence had been presented. The defense objected, stating that the jury should be allowed to consider the charge. The trial court disagreed and granted the People's request. Ultimately, the court submitted several counts related to the criminal possession of the handgun but not the one related to the air pistol.
In a 3-2 decision, the Appellate Division held that this was no mistake. Relying on this Court's opinion in People v. Leon, the majority observed that a trial judge must "weigh competing possibilities" in deciding which charges in an indictment to submit to a jury (152 A.D.3d 53, 56, 55 N.Y.S.3d 236 [1st Dept. 2017], quoting People v. Leon, 7 N.Y.3d 109, 114, 817 N.Y.S.2d 619, 850 N.E.2d 666 [2006] ). In particular, the judge must determine whether the submission of a less serious count is more likely *768 to help the jury reach a fair verdict, distract it, or give it "an opportunity to split the difference" ( id. ). According to the Appellate Division majority, in this case "[t]he [trial] court providently dismissed the air pistol charge so that the jury could not compromise by resorting to jury nullification and merely find defendant guilty of that less serious charge" ( id. at 57, 57 N.Y.S.3d 309 ).
The dissenting Justices, by contrast, maintained that the dismissal "removed defendant's only defense from consideration, namely, that he only possessed the air pistol" ( id. at 65, 57 N.Y.S.3d 309 [Acosta, P.J., and Gesmer, J., dissenting] ). As the dissent cogently argued, far from allowing the jury to reach a compromise verdict, submitting the air pistol count would have enabled the jury to focus on the "straightforward" question at heart of the case, "that is, did defendant possess both [the air pistol and the handgun] or just the air pistol?" ( id. at 66, 57 N.Y.S.3d 309 ).
On the facts of this case, the trial court erred because the evidence supported the charge and dismissal of the air pistol count put the defendant at a distinct and impermissible disadvantage, as he had already admitted possession of the air pistol. Contrary to the Appellate Division majority's conclusion, the defendant was not making a ploy for jury nullification.
***958 Indeed, on the facts of this case, leaving the jury to render a verdict where defendant had confessed guilt to a crime that was no longer before the jury encouraged reverse nullification, distracted the jury from its fact-finding duty of determining defendant's guilt of unlawful possession of the handgun, and generated confusion. This was an abuse of discretion. Defendant's conviction should be reversed and a new trial ordered (see People v. Extale, 18 N.Y.3d 690, 696, 943 N.Y.S.2d 801, 967 N.E.2d 179 [2012] ).
II.
A.
Under both the New York and the Federal Constitution, defendants have a fundamental right to present a complete defense. As the United States Supreme Court held in Chambers v. Mississippi, "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations" ( 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 [1973] ). Although a trial court has wide latitude in conducting proceedings, a judge may not take action-even discretionary action-that abridges this basic criminal right (see, e.g., People v. Carroll, 95 N.Y.2d 375, 385, 718 N.Y.S.2d 10, 740 N.E.2d 1084 [2000] [observing that a trial court's discretionary decisions-here, on the admission of evidence-may not infringe a defendant's fundamental right to present a complete defense] ).
It is now well established that the power to dismiss a count in an indictment lies within the discretion of the trial court. That was not always the case. At early common law, the prosecutor could unilaterally dismiss any count in an indictment. Over a hundred years ago, however, the New York Legislature abolished this old right of nolle prosequi and transferred the power to the trial judge (see Code of Criminal Procedure §§ 671, 672). Now, "[w]hether ... a count should be dismissed at the prosecutor's request is an issue to be decided by the court in its discretion" ( Extale, 18 N.Y.3d at 692, 943 N.Y.S.2d 801, 967 N.E.2d 179 ).
Such discretion is not boundless. In particular, a judge's power to dismiss counts of an indictment is limited by the Criminal Procedure Law, which specifically protects the defendant's right to request the submission of lesser included offenses where those offenses might be supported by a *769 reasonable view of the evidence (see CPL 300.50 ; see also People v. Mussenden, 308 N.Y. 558, 561-562, 127 N.E.2d 551 [1955] [observing that "[i]t has been repeatedly written that if, upon any view of the facts, ***959 a defendant could properly be found guilty of a lesser degree or an included crime, the trial judge must submit such lower offense" to the jury and collecting New York cases] ).
Although the Criminal Procedure Law does not mandate submission of a non-inclusory lesser count, as this Court explained in Leon, a court's refusal to submit the count is subject to review for abuse of discretion. However, the Appellate Division majority's reliance on Leon here to uphold the trial court's dismissal of the air pistol count as a non-inclusory lesser offense is misplaced. Leon acknowledges the uncontroverted general rule that a judge may not exceed the proper bounds of the court's discretionary authority when denying a request to charge. In Leon itself, the Court upheld the dismissal of a non-inclusive lesser offense where submission of the offense to the jury would have distracted it from its primary fact-finding function.
The facts of Leon are uncomplicated. The defendant, a drug dealer, shot and killed a rival drug dealer in the course of an argument between the rival and the defendant's friend on a street near the defendant's home. As relevant here, the indictment included two counts of criminal possession of a weapon, both springing from the same factual nexus, namely the defendant's use of a loaded gun to shoot the victim on a city street. The defendant was indicted, among other crimes, on one charge of criminal possession in the second degree for possessing a loaded firearm "with intent to use the same unlawfully against another" (former Penal Law § 265.03 [2 ] ), and one charge of criminal possession in the third degree for possessing the loaded firearm outside of his home or place of business (see former Penal Law § 265.02 [4 ] ). The judge denied defendant's request that both charges be submitted to the jury, submitting only the second-degree count, observing that there was no "reasonable view of the evidence" according to which "the defendant would be guilty of th[e third-degree] charge" but not the second-degree one ( Leon, 7 N.Y.3d at 112, 817 N.Y.S.2d 619, 850 N.E.2d 666 ). This Court upheld the trial court, holding that the judge did not abuse his discretion in declining to charge the jury on the non-inclusory lesser count.
As a technical legal matter, the two offenses in Leon were theoretically non-inclusory-that is, it was possible to commit one without committing the other. The trial court thus had discretion to forego submission of the less serious charge. Under the specific facts of the case, however, the offenses in Leon ***960 were inclusory in fact, if not in law. In the trial court's judgment, the defendant either had the gun outdoors with the intent to use it unlawfully, in which case he was guilty of criminal possession in the second degree, or he did not, in which case he was not. The third-degree charge effectively functioned as a lesser included offense of the second-degree count.[2]
Leon, then, is best understood as the result of the interplay of the unique facts of that case with the general principle that a lesser included offense must be submitted to the jury on a defendant's request *770 unless the charge cannot be supported under any reasonable view of the evidence. As the Court explained, the trial court could conclude that "it was theoretically possible, on the evidence here, for the jury to find defendant not guilty of the second-degree crime ... and guilty only of third-degree possession. But the trial court could well have thought that the possibility defendant had no unlawful intention was farfetched [because] [h]e was ... a drug dealer bringing his gun to an argument with a person in the same line of work" ( id. at 114, 817 N.Y.S.2d 619, 850 N.E.2d 666 ). Leon thus stands for the proposition that a trial court has discretion not to submit a non-inclusory less serious count where that count could not be supported by a reasonable view of the evidence, and so the charge's inclusion would only "interfere with, rather than advance, the jury's performance of its duty" ( id. ). Leon does not mandate the outcome advocated by the People here.
B.
Our law on jury nullification does not support the conclusion of the Appellate Division majority here either. Jury nullification scenarios arise when a jury has a choice to limit its finding of guilt to a lesser offense notwithstanding that the evidence supports a verdict of guilt on a more serious count. While the "jury's proper function or duty ... consists solely of applying the legal definitions of crime, as laid down by the trial court, to the evidence and of convicting of the crime charged, if that is established beyond a reasonable doubt" ( ***961 Mussenden, 308 N.Y. at 562, 127 N.E.2d 551 ), it has long been recognized that jurors may feel compelled to render a verdict for the People solely on a lesser count. The Court has explained that the jury's "mercy-dispensing power is a thing apart from the true duty imposed upon a jury; ... it is, rather, an inevitable consequence of the jury system" ( id. ).
"As is manifest, merciful or weak jurors may disregard even overwhelming proof of culpability and acquit entirely or convict of a lower crime than the evidence reflects. But that, it has been correctly observed, is 'their responsibility and not the court's.' ...There is probably no way to prevent or guard against this, but certainly a court should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict. Or, to express the matter in somewhat different terms, the jury's power to dispense mercy, by favoring the defendant despite the evidence, should not be allowed so to dominate the trial proceedings as to impede or interfere with the jury's primary fact-finding function."
( id. at 563, 127 N.E.2d 551, citing People v. Randazzo, 127 A.D. 824, 825, 112 N.Y.S. 104 [4th Dept. 1908] ).
This understanding of the realities of the jury's deliberative process is reflected in our law. The mandatory submission of lesser included offenses "if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater" ( CPL 300.50 [1 ] ) provides the jury an opportunity to find a defendant guilty of the lesser (and not the more serious) crime, but only under appropriate circumstances. As the Court recognized in discussing the predecessor to CPL 300.50, Code of Criminal Procedure §§ 444 and 445, "although originally 'intended merely to prevent the prosecution from failing where some element of the crime charged was not made out,' the [lesser included offense] doctrine ... redounds to the benefit of defendants as well, since its effect actually is to empower the jury 'to extend mercy to an accused by finding a lesser degree of crime than is established by the *771 evidence' " ( Mussenden, 308 N.Y. at 562, 127 N.E.2d 551 [citations omitted]; see also People v. Boettcher, 69 N.Y.2d 174, 182 n. 3, 513 N.Y.S.2d 83, 505 N.E.2d 594 [1987] ). ***962 III.
Defendant's sole defense was that he possessed and discarded the air pistol and not the handgun. To support this defense, he submitted evidence that the gun belonged to Ramsanany and not to him. The non-inclusory less serious air pistol count was supported by a reasonable view of the evidence. Indeed, the prosecution proffered substantial witness testimony to prove defendant's guilt of this charge, and defendant himself admitted possession. Under these circumstances, the trial court denied defendant "a fair opportunity to defend against the State's accusations" ( Chambers, 410 U.S. at 294, 93 S.Ct. 1038 ) by only submitting the handgun counts to the jury after the People and defendant presented evidence that he possessed the air pistol.
Moreover, the defense presented did not require that a jury exercise mercy in defendant's favor, but rather that the jury find on the evidence submitted that the People failed to establish beyond a reasonable doubt that he possessed and discarded the handgun. The trial court, however, also exceeded the bounds of its discretion when it created an opportunity for reverse nullification. Defendant admitted his guilt to possession of an air pistol when he was facing a count for that act. The court allowed the prosecution to introduce testimony and evidence prejudicial to defendant that was relevant to that air pistol count alone. When it declined to submit that charge to the jury, after defendant's admission and the entry of the prosecution's evidence, the court put the defendant at an intolerable disadvantage. The jury, knowing that defendant had admitted guilt on the air pistol, could have been affected in its ultimate verdict to find him guilty of possession of a weapon, not as an exercise of mercy, but punishment, acting as the conscience of the community (see Jack B. Weinstein, Considering Jury Nullification: When May and Should a Jury Reject the Law to Do Justice , 30 AM. CRIM. L. REV. 239, 244-245 [1993] [observing that juries act "as the conscience of the democratic community" and that they "are charged not with the task of blindly and mechanically applying the law, but of doing justice in light of the law, the evidence presented at trial, and their own knowledge of society and the world" (internal quotation marks and citations omitted) ] ). For just "as we have recognized, as a practical matter, that the availability of a lesser included offense may affect a jury's deliberations" ( Boettcher, 69 N.Y.2d at 180, 513 N.Y.S.2d 83, 505 N.E.2d 594 ), denial of a less serious non-inclusive offense to which defendant has admitted guilt may also affect a jury's deliberations.
***963 After all, the jury was fully aware of defendant's admitted guilt to an offense for which they could not find him guilty, since the court only charged the handgun count. To hold him accountable, the jury could have believed that the only option it had was to convict him on the handgun charges.
The trial court thus abused its discretion when it refused to submit the charge on the offense to which defendant admitted guilt on the incorrect basis that defendant sought nullification or a compromise verdict in his favor. While "a court should avoid doing anything, such as submitting lower crimes in an inappropriate case, that would constitute an invitation to the jury to foreswear its duty and return a compromise or otherwise unwarranted verdict" ( Mussenden, 308 N.Y. at 563, 127 N.E.2d 551 ), a court must also avoid creating circumstances that foster a jury verdict favorable *772 to the People because a defendant admits guilt of a dismissed count.
The Appellate Division majority's conclusion that submission of two unrelated charges "could only confuse the jurors or permit jury nullification during jury deliberations" is unfounded (152 A.D.3d at 57). What confusion could possibly come from submission of an offense on which the People had entered extensive evidence and defendant had admitted guilt? As the dissent commented, "this was not a complicated case" (152 A.D.3d at 66 [Acosta, P.J., and Gesmer, J., dissenting] ). Asking the jury to consider defendant's guilt on the air pistol count would not have kept the jury from exercising its fact-finding duty.
Ironically, it appears that by permitting evidence on the air pistol but not charging on this count, the trial court affirmatively created confusion. As the dissent noted,
"notwithstanding the court's charge that all the counts referred to the [handgun], the jurors nonetheless asked for a 'read-back of [the detective's] testimony about his conversations with... [Ramsanany].' They followed shortly after that with a request to examine both pistols. And when the jurors requested a recharge on the submitted counts, the court denied the defense's request to charge the jury that the counts only referred to the [handgun]" (id. ).
To reach a verdict on the handgun count, the jury obviously considered defendant's version of events and whether someone else possessed and disposed of the gun. In other words, the ***964 jury had to deconstruct the evidence and the People's and defendant's counter-narratives to decide whether it believed defendant's story. The court deprived the jury of an opportunity, however, to clearly express its conclusions.
IV.
While a trial court need not grant a defendant's request to submit a charge on a non-inclusive less serious offense in all cases, it is an abuse of discretion to dismiss the lesser count where, as here, the People present evidence of defendant's guilt of the less serious offense as a central part of its case-in-chief, and defendant admits guilt to the lesser crime in sole defense against the greater offense. Not presenting the count here was the equivalent of denying the defendant the opportunity to fully present his defense, denying him a fair trial, and encouraging reverse nullification. I dissent.
On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals ( 22 NYCRR 500.11 ), order affirmed, in a memorandum.
Chief Judge DiFiore and Judges Stein, Fahey, Garcia and Feinman concur; Judge Rivera dissents in an opinion in which Judge Wilson concurs.

A BB gun is an air pistol that fires small metal balls called "BBs" (Merriam-Webster Online Dictionary, BB gun [https://www.merriam-webster.com/dictionary/BBg¨un] [accessed March 2, 2018] ). Although not a firearm, possessing one may still constitute a violation of the Administrative Code of the City of New York, as was charged here (see AC § 10-131 [b] ). By contrast, illegal possession of a handgun is the more serious offense of criminal possession of a weapon in violation of the Penal Law (see PL 265.00 et. seq. ).

The trial court may very well have seen the issue this way as, in assessing defendant's request, it used words common to the test for submission of a lesser included offense, "discuss[ing] whether there was a 'reasonable view of the evidence' that would support the third-degree possession count" (Leon, 7 N.Y.3d at 114, 817 N.Y.S.2d 619, 850 N.E.2d 666 [emphasis added] ).