■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JARED CARR-EL, Also Known as JARED CARREL, Appellant. [732 NYS2d 256] —Appeal by the defendant from a judgment of the Supreme Court, Queens County (Finnegan, J.), rendered April 16, 1998, convicting him of robbery in the second degree, grand larceny in the fourth degree, criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree (two counts), upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant contends that the People failed to prove his guilt of robbery in the second degree beyond a reasonable doubt because the evidence was insufficient to show that he was actually present when the codefendant threatened to use force against the complainant, and that he shared the codefendant's intent to commit a forcible theft. However, viewing the evidence in the light most favorable to the prosecution (*see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt.

It was established at trial that during the early morning hours of February 8, 1997, the complainant fell asleep on an "N" train headed to Queens. When the train reached Ditmars Boulevard, its final stop, it paused in the station with its doors open. While the train was waiting at the station, the defendant and the codefendant entered the subway car where the complainant was sleeping. As the defendant stood in the doorway of the subway car acting as a lookout, an undercover

police officer witnessed the codefendant slice open the complainant's pants pocket with a razor blade, and remove a black beeper. The defendant and codefendant then left the subway car, and boarded a train across the platform. Soon after they left, the complainant woke up, and realized that his pocket had been cut and his beeper taken. Through the train window, the complainant saw the defendant standing in the doorway of a subway car across the platform, while the codefendant was engaged in cutting open the pants pocket of another sleeping passenger. When the complainant approached the subway car to confront the men he believed had taken his property, the defendant warned the codefendant, "there he comes, there he comes." Inside the car, the complainant asked the codefendant to return his beeper, but the codefendant replied, "I didn't do it. I didn't do it." The codefendant then threatened to hit the complainant. At this point, undercover police officers stepped in, handcuffing the codefendant, and then apprehending the defendant, who had fled to a subway car closer to the rear of the train.

"The core requirement for all three degrees of robbery under the Penal Law is proof that the defendant forcibly stole property from another" (*People v Lopez,* 73 NY2d 214, 219). Here, although the theft of the complainant's beeper began as a larceny, it escalated into the crime of robbery when the codefendant threatened to use physical force against the complainant for the purpose of "[p]reventing or overcoming resistance to the * * * retention [of the property] immediately after the taking" (Penal Law § 160.00 [1]; *see, People v Jones,* 282 AD2d 382; *People v Bachmann,* 237 AD2d 897; *People v Thomas,* 226 AD2d 120; *People v Henry,* 204 AD2d 187; *People v Letterlough,* 203 AD2d 589). Furthermore, the prosecution presented legally sufficient evidence that the codefendant was "aided by a person actually present" (Penal Law § 160.10 [1]) in his commission of the theft, thus raising the offense to robbery in the second degree. The jury could have reasonably inferred from the complainant's testimony that the defendant, who was standing in one of the doorways of the subway car when the complainant entered the car to demand the return of his property, was in a position to render immediate assistance to the codefendant in the event that force or the threat of force proved necessary to retain the stolen property. Thus, the defendant's presence posed a sufficient threat of additional violence so as to satisfy the aggravating element necessary to sustain a conviction of robbery in the second degree (*see, People v Stokes,* 278 AD2d 18; *People v Smith,* 188 AD2d 295; *People v Wilkerson,* 189 AD2d 592; *People v Moses,* 162 AD2d 311; *People v Dennis,* 146 AD2d 708, *affd* 75 NY2d 821).

Furthermore, the evidence was legally sufficient to establish the defendant's complicity and assistance in the commission of the robbery. In order to hold an accessory criminally liable for acts committed by a principal actor, the prosecution must prove that the accessory possessed the mental culpability necessary to commit the crime charged, and that, in furtherance thereof, he solicited, requested, commanded, importuned, or intentionally aided the principal in the commission of the crime (*see,* Penal Law § 20.00; *People v Allah,* 71 NY2d 830; *see also, People v Coulter,* 240 AD2d 756; *People v Breeden,* 220 AD2d 761). Intent can be established from an act itself, or from the accessory's conduct and the surrounding circumstances (*see, People v Bracey,* 41 NY2d 296; *People v McDonald,* 257 AD2d 695; *People v Coulter, supra*). Proof of a defendant's role as a lookout has been held sufficient to establish accessorial liability (*see, People v Coulter, supra; People v Wooten,* 214 AD2d 596; *People v Roldan,* 211 AD2d 366, *affd* 88 NY2d 826).

In this case, the evidence clearly established that the defendant was acting as a lookout when the codefendant used a razor blade to slice open the complainant's pants pocket and take his beeper, and that the defendant called out a warning to the codefendant when he saw the complainant approaching them to demand the return of his property. Although the use of force was not necessary to accomplish the initial taking, the jury could have reasonably concluded that the defendant shared a community of purpose with his codefendant to use or threaten the use of force in order to retain the stolen property. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt is not against the weight of the evidence (*see,* CPL 470.15).

The defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit. Krausman, J. P., S. Miller and Schmidt, JJ., concur.

McGinity, J., concurs in part and dissents in part and votes to modify the judgment by vacating the conviction of robbery in the second degree, vacating the sentence imposed thereon, and dismissing that count of the indictment, and otherwise affirming the judgment, with the following memorandum: On February 8, 1997, at approximately 4:30 A.M., the defendant, along with the codefendant Danny Postigo, boarded the "N" train at the Ditmars Boulevard and 31st Street subway station in Queens County. The codefendant approached a sleeping passenger, the complainant, and sliced open the complainant's pants' pocket and removed a beeper, as the defendant stood at the doors of the subway car. The defendant and codefendant

then proceeded to the next subway car and approached a second sleeping passenger. As the codefendant cut the pocket of the second passenger, the complainant awoke to discover his beeper missing. The complainant saw the defendant and codefendant removing the second passenger's property and then proceeded towards that subway car. The complainant heard the defendant say "there he comes" and confronted the codefendant, demanding the return of his beeper. The codefendant denied taking it and threatened to hit the complainant.

While the defendant was properly convicted of the crimes of grand larceny in the fourth degree, criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree, I agree with the defendant's contention that the prosecutor failed to establish that he intended to commit the crime of robbery in the second degree.

In order to hold an alleged accessory liable for the crime committed by the principal actor, the People must establish, beyond a reasonable doubt, that the alleged accessory possessed the mental capability necessary to commit the crime charged, i.e., in this case robbery in the second degree, and that in furtherance thereof, he solicited, requested, commanded, importuned, or substantially aided the principal (*see, People v White,* 178 AD2d 452, 453; *cf.,* Penal Law § 20.00; *People v La Belle,* 18 NY2d 405). The evidence, when considered in the light most favorable to the prosecution (*see, People v Contes,* 60 NY2d 620) establishes, at best, that the defendant intended to commit the crime of grand larceny. The record is devoid of evidence that the defendant intended to use or threatened to use force against the complainant or was present when his codefendant spoke. Without adequate proof of a shared intent with the principal actor, there is no community of purpose, and, therefore, no basis for finding that the defendant acted in concert with the actual perpetrator (*see, People v White, supra; People v Taylor,* 141 AD2d 581).

Accordingly, the defendant's conviction of the crime of robbery in the second degree should be vacated, the sentence imposed thereon should be vacated, and that count of the indictment should be dismissed.