People v Conley (2021 NY Slip Op 01676)





People v Conley


2021 NY Slip Op 01676


Decided on March 19, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 19, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


1156 KA 20-00601

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
KAITLYN A. CONLEY, DEFENDANT-APPELLANT. 






SIMONE M. SHAHEEN, COOPERSTOWN, AND CHRISTOPHER J. PELLI, UTICA, FOR DEFENDANT-APPELLANT. 
KAITLYN A. CONLEY, DEFENDANT-APPELLANT PRO SE.
SCOTT D. MCNAMARA, DISTRICT ATTORNEY, UTICA (STEVEN G. COX OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Oneida County Court (Michael L. Dwyer, J.), rendered January 11, 2018. The judgment convicted defendant upon a jury verdict of manslaughter in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of manslaughter in the first degree (Penal Law
§ 125.20 [1]). The conviction stems from the death of Mary Yoder, a 60-year-old chiropractor who owned Chiropractic Family Care (CFC) in Whitesboro, New York, with her husband, William (Bill) Yoder. Mary experienced gastrointestinal distress and died two days later. The Onondaga County Medical Examiner's Office (ME's Office) determined that Mary died of colchicine toxicity. In the course of its investigation into Mary's death, the Oneida County Sheriff's Office (OCSO) received a call from the ME's Office indicating that it had received an anonymous letter that implicated the Yoders' youngest child, Adam, in Mary's death and stated that a bottle of colchicine could be located under the front passenger seat of Adam's Jeep. After being questioned at the OCSO, Adam granted investigators limited consent to search the area in question. The search uncovered a bottle of colchicine and a crumpled receipt from Art Chemicals for the purchase of the colchicine; the receipt bore an email address that included the letters "mradamyoder." The OCSO then interviewed defendant, who was CFC's office manager and Adam's former girlfriend. The day after that interview, defendant returned to the OCSO and provided a DNA sample. During her third interview, on December 21, 2015, defendant admitted that she wrote the anonymous letter. On February 5, 2016, the final time defendant was interviewed, defendant acknowledged that she purchased a prepaid credit card in Adam's name. The serial number on that credit card matched the serial number on the Art Chemicals receipt. DNA testing excluded Adam's DNA from the mixture of three contributors on the colchicine vial, and determined that defendant was a major contributor of DNA that was found on the colchicine vial and the cardboard wrapper in which the vial was encased. Defendant was indicted for, inter alia, murder in the second degree (§ 125.25 [1]) for intentionally causing Mary's death. Defendant's first jury trial ended in a hung jury. Following the second trial, the jury found defendant not guilty of murder in the second degree and guilty of manslaughter in the first degree, which was submitted to the jury as a lesser included offense of murder in the second degree. County Court sentenced defendant to a determinate term of 23 years of imprisonment and five years of postrelease supervision.
We reject the contention raised in defendant's pro se supplemental brief that the search warrant for defendant's cell phone was issued without probable cause because it was based on stale information. "Probable cause does not require proof sufficient to warrant a conviction [*2]beyond a reasonable doubt but[, rather, it] merely [requires] information sufficient to support a reasonable belief that an offense has been or is being committed or that the evidence of a crime may be found in a certain place" (People v Bigelow, 66 NY2d 417, 423 [1985]). "[P]robable cause is not to be determined by counting the number of days between the occurrence of the events relied upon and the issuance of the search warrant. Information may be acted upon as long as the practicalities dictate that a state of facts existing in the past, which is sufficient to give rise to probable cause, continues to exist at the time the application for a search warrant is made" (People v Clarke, 173 AD2d 550, 550 [2d Dept 1991]; see People v Bryan, 191 AD2d 1029, 1030 [4th Dept 1993], lv denied 82 NY2d 714 [1993]). According "great deference to the issuing Judge" (People v Harper, 236 AD2d 822, 823 [4th Dept 1997], lv denied 89 NY2d 1094 [1997]), we conclude that the court properly determined that there was sufficient information in the warrant application to support a reasonable belief that evidence of a crime was on defendant's cell phone (see People v Griswold, 155 AD3d 1658, 1658-1659 [4th Dept 2017], lv denied 31 NY3d 984 [2018]). Defendant's related contention that the search warrant failed to meet the particularity requirement is unpreserved (see CPL 470.05 [2]; see generally People v Williams, 127 AD3d 612, 612 [1st Dept 2015], lv denied 27 NY3d 1009 [2016]), and we decline to exercise our power to review that contention as a matter of discretion in the interest of justice.
We reject the contentions of defendant, presented in her pro se supplemental brief, that the court erred in failing to suppress certain statements she made to police investigators on December 21, 2015, and February 5, 2016. "[B]oth the elements of police 'custody' and police 'interrogation' must be present before law enforcement officials constitutionally are obligated to provide the procedural safeguards imposed upon them by Miranda" (People v Huffman, 41 NY2d 29, 33 [1976]). "[T]he fact that a defendant is being interviewed in the police station does not necessarily mean that he [or she] is to be considered 'in custody' " (People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]). On December 21, 2015, defendant arrived at the police station on her own; she was not handcuffed, and she was not under arrest (see People v MacGilfrey, 288 AD2d 554, 556 [3d Dept 2001], lv denied 97 NY2d 757 [2002]). Defendant was only a witness at that point, and investigators wanted to find out the nature of defendant's relationship with Adam and to learn additional information about Bill, with whom defendant worked and whom investigators considered a person of interest. Although defendant's statement that she wrote the anonymous letter caused investigators to look at her as a person of interest, defendant went home at the conclusion of the interview. Consequently, the court, which reviewed the recording of the interview, properly determined that defendant was not in custody during the interview on December 21 (see People v Morris, 173 AD3d 1797, 1799 [4th Dept 2019], lv denied 34 NY3d 953 [2019]).
With respect to the interview on February 5, 2016, in which defendant arrived with and left with her parents, we similarly conclude, contrary to defendant's further contention in her pro se supplemental brief, that she was not in custody (see id.). Defendant's contention that the police used "psychological coercion" to secure her statements is not preserved (see People v Ramirez, 172 AD3d 619, 619-620 [1st Dept 2019], lv denied 34 NY3d 936 [2019]; People v Hudson, 158 AD3d 1087, 1087 [4th Dept 2018], lv denied 31 NY3d 1117 [2018]) and is, in any event, without merit (see People v Warrington, 146 AD3d 1233, 1234-1235 [3d Dept 2017], lv denied 29 NY3d 1038 [2017]).
Contrary to defendant's contention in her main brief, the court did not err in charging the jury on the lesser included offense of manslaughter in the first degree inasmuch as there is a reasonable view of the evidence to support a finding that defendant committed the lesser offense but not the greater (see People v Hull, 27 NY3d 1056, 1058 [2016]), i.e., that she intended to cause serious physical injury to the victim rather than to kill her (see People v Cotton, 153 AD3d 1580, 1580-1581 [4th Dept 2017], lv denied 30 NY3d 1059 [2017]; People v Nesmith, 36 AD3d 463, 464 [1st Dept 2007], lv denied 8 NY3d 948 [2007]; People v Faison, 265 AD2d 422, 422-423 [2d Dept 1999], lv denied 95 NY2d 934 [2000]).
Defendant failed to preserve her contention in her main brief regarding the manner in which the court instructed the jury on manslaughter in the first degree (see People v Maltese, 148 AD3d 1780, 1782-1783 [4th Dept 2017], lv denied 29 NY3d 1093 [2017]; People v Clark, 142 AD3d 1339, 1340 [4th Dept 2016], lv denied 28 NY3d 1143 [2017]; People v Porter, 119 AD3d 438, 439 [1st Dept 2014], lv denied 24 NY3d 1046 [2014]). In any event, the instruction given by the court was consistent with the pattern Criminal Jury Instructions (see CJI2d [NY] Penal [*3]Law § 125.20 [1]). Defendant's contention regarding the submission to the jury of an annotated verdict sheet is waived inasmuch as counsel for defendant consented to its use (see People v Howard, 167 AD3d 1499, 1500 [4th Dept 2018], lv denied 32 NY3d 1205 [2019]; see generally People v Johnson, 96 AD3d 1586, 1587 [4th Dept 2012], lv denied 19 NY3d 1027 [2012]). Defendant failed to preserve for our review her related contention with respect to the court's compliance with CPL 310.20 (2) (see People v Allen, 122 AD3d 1423, 1424 [4th Dept 2014], lv denied 25 NY3d 987 [2015], reconsideration denied 25 NY3d 1197 [2015]; People v Dombrowski-Bove, 300 AD2d 1122, 1124 [4th Dept 2002]).
Defendant correctly concedes that she failed to preserve for our review her contention in her main brief that the evidence is legally insufficient to support the conviction inasmuch as she presented evidence after the court denied her motion for a trial order of dismissal at the close of the People's case but failed to renew her motion at the close of the proof (see People v Hines, 97 NY2d 56, 61-62 [2001], rearg denied 97 NY2d 678 [2001]). In any event, that contention lacks merit (see People v Ferguson, 177 AD3d 1247, 1248 [4th Dept 2019]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude, contrary to defendant's contention in her pro se supplemental brief, that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). Contrary to defendant's related contention in her main brief, " 'the second trial did not violate the prohibition against double jeopardy inasmuch as the evidence at the first trial was legally sufficient to support a conviction' " (People v Duda, 45 AD3d 1464, 1465 [4th Dept 2007], lv denied 10 NY3d 764 [2008]; People v Casey, 37 AD3d 1113, 1114 [4th Dept 2007], lv denied 8 NY3d 983 [2007]).
Defendant did not object to the admission of the alleged Molineux evidence at issue on appeal and thus failed to preserve for our review her contention in her main brief that the court erred in admitting that evidence (see CPL 470.05 [2]). In any event, defense counsel's opening statement opened the door to the alleged propensity evidence by discussing the manner in which Adam got sick, shortly before Mary's death, after defendant provided him with a supplement called "Alpha Brain" (see People v Wright, 5 AD3d 873, 876 [3d Dept 2004], lv denied 3 NY3d 651 [2004]; People v Davis, 196 AD2d 880, 881 [2d Dept 1993], lv denied 82 NY2d 848 [1993]). We reject defendant's related contention in her main brief that she was thus denied effective assistance of counsel (see generally People v Baldi, 54 NY2d 137, 147 [1981]). " '[I]t is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for [defense] counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998], quoting People v Rivera, 71 NY2d 705, 709 [1988]), and defendant failed to meet that burden.
Inasmuch as we have concluded that defendant's contentions regarding the legal sufficiency of the evidence lack merit, we reject defendant's further contention in her main brief that defense counsel's failure to preserve those issues for review constitutes ineffective assistance (see Ferguson, 177 AD3d at 1249; see generally Baldi, 54 NY2d at 147). Furthermore, to the extent that defendant contends that defense counsel was ineffective in failing to object to the annotated verdict sheet and, indeed, in consenting to its submission, we conclude under the circumstances of this case that any such error "was not so prejudicial as to deprive defendant of a fair trial and thus does not constitute ineffective assistance" (People v James, 114 AD3d 1202, 1207 [4th Dept 2014], lv denied 22 NY3d 1199 [2014]; see Porter, 119 AD3d at 439; see also Dombrowski-Bove, 300 AD2d at 1124). To the extent that defendant's remaining claims of ineffective assistance of counsel are based on evidence outside the record, a CPL 440.10 motion is required to review those claims (see People v Wilson [appeal No. 2], 162 AD3d 1591, 1592 [4th Dept 2018]; People v Gomez, 52 AD3d 395, 395 [1st Dept 2008], lv denied 11 NY3d 736 [2008]).
Defendant's claims in her main brief of prosecutorial misconduct are, for the most part, unpreserved (see CPL 470.05 [2]; People v Maull, 167 AD3d 1465, 1467-1468 [4th Dept 2018], lv denied 33 NY3d 951 [2019]). In any event, none of the alleged improprieties were so egregious as to deprive defendant of a fair trial (see People v Everson, 158 AD3d 1119, 1122 [4th Dept 2018], lv denied 31 NY3d 1081 [2018], reconsideration denied 31 NY3d 1147 [2018], cert denied — US &mdash, 139 S Ct 1269 [2019]; People v Swan, 126 AD3d 1527, 1527 [4th Dept 2015], lv denied 26 NY3d 972 [2015]). Defendant's contention that the prosecutor arranged to have a former colleague act as Adam's counsel when Adam was a suspect or key witness and [*4]then had that attorney improperly bolster Adam's credibility and testify against defendant at trial is not only unpreserved but also concerns matters outside the record that should be raised by way of a motion pursuant to CPL 440.10 (see People v Carlisle, 50 AD3d 1451, 1451 [4th Dept 2008], lv denied 10 NY3d 957 [2008]).
Contrary to defendant's contention in her main brief, the court acted properly with respect to both trials and, in reviewing the records of both trials, we conclude that "there [is no] basis on which to reasonably question the court's ability to preside over the matter[s]" (People v Gringer, 160 AD3d 660, 661 [2d Dept 2018]).
Defendant's sentence is not unduly harsh or severe. We have reviewed defendant's remaining contentions in her main and pro se supplemental briefs and conclude that none warrants reversal or modification of the judgment.
Entered: March 19, 2021
Mark W. Bennett
Clerk of the Court