People v Griffin (2022 NY Slip Op 01698)





People v Griffin


2022 NY Slip Op 01698


Decided on March 11, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 11, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, CURRAN, AND WINSLOW, JJ.


1034 KA 21-00605

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
WENDELL GRIFFIN, DEFENDANT-APPELLANT. 






STEVEN M. SHARP, ALBANY, FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered July 19, 2019. The judgment convicted defendant upon a jury verdict of murder in the second degree and robbery in the first degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him after a jury verdict of murder in the second degree (Penal Law § 125.25 [3] [felony murder]) and two counts of robbery in the first degree (§ 160.15 [1], [2]), in connection with the shooting death of the victim that occurred during the course of a robbery. We affirm.
Defendant contends that the conviction is not supported by legally sufficient evidence because the People did not establish that a robbery occurred, which is an element of all the counts of which defendant was convicted. Insofar as relevant here, a person commits felony murder when he or she "[a]cting either alone or with one or more other persons, . . . commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he [or she], or another participant . . . causes the death of a person other than one of the participants" (Penal Law § 125.25 [3]). "A person is guilty of robbery in the first degree when he [or she] forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he [or she] or another participant in the crime . . . [either c]auses serious physical injury to another person who is not a participant in the crime; or . . . [i]s armed with a deadly weapon" (§ 160.15 [1], [2]).
Contrary to defendant's contention, the evidence, viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), is legally sufficient to support the conviction (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Specifically, we conclude that a rational jury could have inferred beyond a reasonable doubt that defendant committed felony murder and robbery by participating in a robbery that resulted in the shooting death of the victim. There is ample evidence to establish defendant's identity as a perpetrator of the charged crimes inasmuch as surveillance video clearly showed defendant and the codefendant acting in concert in the moments leading up to the codefendant shooting the victim. Supporting the inference that defendant participated in a robbery is evidence that the victim often wore a necklace, but that the necklace was not found on the victim's body after his death (see People v Good, 201 AD2d 254, 254-255 [1st Dept 1994]). Further, defendant's course of conduct depicted on the surveillance video fit a " 'pattern common to robberies' " that would allow the jury to reasonably infer that he robbed the victim (People v Lamont, 25 NY3d 315, 321 [2015]; see People v Gordon, 23 NY3d 643, 652-653 [2014]; People v Luke, 279 AD2d 534, 535 [2d Dept 2001], lv denied 96 NY2d 785 [2001]). The surveillance video showed defendant peering into the parked vehicle in which the victim was sleeping as though he was casing it, keeping other people who may have interfered to thwart the robbery away from the sleeping victim, and—most crucially—reaching into the vehicle in the vicinity of the victim's neck moments [*2]before the shooting and then running away as though he was holding something (see People v Reed, 22 NY3d 530, 532, 535 [2014], rearg denied 23 NY3d 1009 [2014]; Luke, 279 AD2d at 535; People v Hope, 128 AD2d 638, 638-639 [2d Dept 1987], lv denied 69 NY2d 1005 [1987]). In short, "[a]lthough the surveillance footage did not clearly show defendant [taking the necklace from the victim], his other actions on the video . . . support a rational inference of [robbery]" (People v Johnson, 197 AD3d 61, 69 [3d Dept 2021]). For the same reasons, viewing the evidence in light of the elements of the crimes as charged to the jury (see generally People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
We reject defendant's contention that he was denied effective assistance of counsel by defense counsel's failure to challenge for cause a prospective juror during jury selection because such a challenge would have had little or no chance of success (see generally People v Caban, 5 NY3d 143, 152 [2005]). Although at the beginning of voir dire the prospective juror made statements that raised concerns about her impartiality, after further questioning she unequivocally and credibly stated that she would decide the case based solely on the trial evidence and no longer held the opinions that had previously raised concerns about her impartiality (see People v Warrington, 28 NY3d 1116, 1120 [2016]; People v Anderson, 113 AD3d 1102, 1103 [4th Dept 2014], lv denied 22 NY3d 1196 [2014]; see generally People v Patterson, 173 AD3d 1737, 1739 [4th Dept 2019], affd 34 NY3d 1112 [2019]).
We reject defendant's further contention that defense counsel was ineffective because he did not request a circumstantial evidence charge, inasmuch as such a request also "would have had little or no chance of success" (People v Lawrence, 192 AD3d 1686, 1688 [4th Dept 2021] [internal quotation marks omitted]). A circumstantial evidence charge "is required only where the evidence against defendant is wholly circumstantial" (People v Smith, 145 AD3d 1628, 1630 [4th Dept 2016], lv denied 31 NY3d 1017 [2018]; see People v Slade, 133 AD3d 1203, 1207 [4th Dept 2015], lv denied 26 NY3d 1150 [2016]), which we conclude is not the case here given, inter alia, the surveillance camera video depicting the robbery and murder (see People v Geddes, 49 AD3d 1255, 1256-1257 [4th Dept 2008], lv denied 10 NY3d 863 [2008]; People v Buskey, 13 AD3d 1058, 1059 [4th Dept 2004]; see generally People v Lewis, 300 AD2d 827, 829 [3d Dept 2002], lv denied 99 NY2d 630 [2003]). Even assuming, arguendo, that defendant was entitled to such a charge, we conclude that the "single error in failing to request such a charge [would] not constitute ineffective representation as it was not so serious as to compromise defendant's right to a fair trial" (People v Gunney, 13 AD3d 980, 983 [3d Dept 2004], lv denied 5 NY3d 789 [2005]; see Geddes, 49 AD3d at 1257).
We likewise reject defendant's contention that he was deprived of a fair trial through the use of an interpreter who allegedly had difficulty accurately interpreting a witness's testimony. Defendant failed to establish "a serious error in translation [or] that the alleged problems with the translation prevented him from conducting an effective cross-examination [of the witness in question] or caused any other prejudice" (People v Chowdhury, 180 AD3d 455, 456 [1st Dept 2020]; see People v Dat Pham, 283 AD2d 952, 952 [4th Dept 2001], lv denied 96 NY2d 900 [2001]). Further, to the extent that "there were occasional difficulties in translation, they were sufficiently rectified so that the [witness's] testimony was properly presented to the jury" (People v Kowlessar, 82 AD3d 417, 418 [1st Dept 2011]; see People v Restivo, 226 AD2d 1106, 1107 [4th Dept 1996], lv denied 88 NY2d 883 [1996]). Defendant's further contentions that the interpreter was not properly sworn and that County Court should have conducted an inquiry into the accuracy of the translation are not preserved for our review (see generally People v Maldonado, 140 AD3d 1530, 1530 [3d Dept 2016], lv denied 28 NY3d 1029 [2016]; People v Rodriguez, 32 AD3d 1203, 1204 [4th Dept 2006], lv denied 8 NY3d 849 [2007]; People v Hubbard, 184 AD2d 781, 781 [2d Dept 1992], lv denied 80 NY2d 1027 [1992]), and we decline to exercise our power to review those contentions as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
We also reject defendant's contention that, at trial, the court erred in allowing a police detective to identify defendant in a surveillance video depicting the robbery and shooting. "A lay witness may give an opinion concerning the identity of a person depicted in a surveillance [video] if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video] than is the jury" (People v Graham, 174 AD3d 1486, 1487-1488 [4th Dept 2019], lv denied 34 NY3d 1016 [2019] [internal quotation marks omitted]; see People [*3]v Russell, 165 AD2d 327, 336 [2d Dept 1991], affd 79 NY2d 1024 [1992]). We conclude that the court did not abuse its discretion in permitting the challenged testimony because the People presented evidence establishing that the police detective was familiar with defendant based on several prior contacts with defendant over the course of several years. Thus, there "was some basis for concluding that the [police detective] was more likely to identify defendant correctly than was the jury" (People v Gambale, 158 AD3d 1051, 1053 [4th Dept 2018], lv denied 31 NY3d 1081 [2018]; see People v Trowell, 172 AD3d 1112, 1113 [2d Dept 2019], lv denied 33 NY3d 1074 [2019]). We reject defendant's contention that a change in his appearance was a prerequisite to the admission of the police detective's testimony (see People v Pinkston, 169 AD3d 520, 521 [1st Dept 2019], lv denied 33 NY3d 1107 [2019]). Based on the foregoing, the police detective's testimony " 'served to aid the jury in making an independent assessment regarding whether the man in the [video] was indeed the defendant' " (People v Montanez, 135 AD3d 528, 528 [1st Dept 2016], lv denied 27 NY3d 1072 [2016]). We also note that the court properly instructed the jury that the police detective merely provided his opinion that defendant was depicted in the video and that the jurors were the ultimate finders of fact on the issue of the identity of the perpetrator, and the jury is presumed to have followed the court's instruction (see People v Brown, 145 AD3d 1549, 1549 [4th Dept 2016], lv denied 29 NY3d 947 [2017]).
We reject defendant's further contention that the court erred in permitting a witness to testify at trial about the identification procedures. Testimony about a photo array procedure, and the array itself, may be admitted where, inter alia, the procedure is " 'blinded,' " that is, where the person administering the array procedure does not know the suspect's position in the array (CPL 60.25 [1] [c] [ii]; see CPL 60.30). Here, although the array viewed by the witness was created by the police detective who administered the procedure, the specific procedure conducted was nevertheless blind because the police detective placed three different arrays in envelopes, which he shuffled before having the witness pick one. This procedure is sufficient, in our view, to ensure that, at the time the witness was viewing the array, the police detective did not know the position of defendant in that array (see Dennis v Secretary, Pennsylvania Dept. of Corr., 834 F3d 263, 321 [3d Cir 2016, McKee, C.J., concurring]; see generally CPL 60.25 [1] [c] [ii]).
However, we agree with defendant that the court erred to the extent that it limited defense counsel's cross-examination of a witness regarding his criminal history. "[C]urtailment [of cross-examination] will be judged improper when it keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony" (People v Gross, 71 AD3d 1526, 1527 [4th Dept 2010], lv denied 15 NY3d 774 [2010] [internal quotation marks omitted]; see People v Dizak, 93 AD3d 1182, 1183 [4th Dept 2012], lv denied 19 NY3d 972 [2012], reconsideration denied 20 NY3d 932 [2012]). Here, we conclude that the court erred in limiting defense counsel's cross-examination regarding the underlying facts of a witness's prior drug conviction that occurred two months before the shooting at issue here, inasmuch as those facts bore on the witness's credibility and were not remote or cumulative (see People v Caines, 221 AD2d 278, 278 [1st Dept 1995], lv denied 88 NY2d 845 [1996]; People v Robinson, 133 AD2d 859, 861 [2d Dept 1987]; cf. People v Corby, 6 NY3d 231, 235-236 [2005]; People v Burton, 286 AD2d 772, 773 [2d Dept 2001], lv denied 97 NY2d 679 [2001]).
Nonetheless, we conclude that any error in admitting the challenged testimony, i.e., the police detective testimony regarding the surveillance video and the witness testimony describing the photo array identification, or in limiting the cross-examination of a witness, is harmless in light of the otherwise overwhelming evidence of defendant's guilt and because there was no significant probability that the court's error with respect to any of that testimony contributed to the conviction (see People v Harlow, 195 AD3d 1505, 1508 [4th Dept 2021], lv denied 37 NY3d 1027 [2021]; People v Flowers, 95 AD3d 1233, 1234 [2d Dept 2012], lv denied 19 NY3d 1025 [2012]; People v Chestnut, 237 AD2d 528, 528 [2d Dept 1997], lv denied 90 NY2d 856 [1997]; see generally People v Crimmins, 36 NY2d 230, 241-242 [1975]).
Finally, we note that the certificate of conviction incorrectly reflects that defendant was convicted of murder in the second degree under Penal Law § 125.25 (1), and it must therefore be amended to reflect that defendant was convicted under Penal Law § 125.25 (3) (see People v Ealahan, 198 AD3d 1376, 1377 [4th Dept 2021], lv denied 37 NY3d 1096 [2021]).
All concur except Carni, J., who is not participating.
Entered: March 11, 2022
Ann Dillon Flynn
Clerk of the Court