People v Cardoza (2023 NY Slip Op 04044)

People v Cardoza

2023 NY Slip Op 04044

Decided on July 28, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 28, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, MONTOUR, AND OGDEN, JJ.

495 KA 18-01291

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
NELSON B. CARDOZA, DEFENDANT-APPELLANT. 

KIMBERLY J. CZAPRANSKI, SCOTTSVILLE, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (KAYLAN C. PORTER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered January 22, 2018. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree (two counts) and reckless endangerment in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) and one count of reckless endangerment in the first degree (§ 120.25). We affirm.
Defendant contends that Supreme Court erred in admitting an audio recording captured by ShotSpotter, an acoustic gunfire detection and location system, in evidence inasmuch as the system was able to identify the location of gunshots within a 25-meter margin of error but the location of the shooting was more than 25 meters from the location identified by ShotSpotter. We disagree. Although a senior technical support engineer for ShotSpotter testified that the system's margin of error was 25 meters, he also explained that additional factors could influence the margin of error. Here, one such factor involved the location of the ShotSpotter sensors in relation to the shooting, an issue that was testified to by the witness and explored by defense counsel in front of the jury. Any inconsistency or discrepancy in relation to the accuracy of the ShotSpotter system went to the weight to be accorded to the evidence and not its admissibility (see generally People v Garces, 158 AD3d 413, 414 [1st Dept 2018], lv denied 31 NY3d 1081 [2018]; People v Shinebarger, 110 AD3d 1478, 1479 [4th Dept 2013], lv denied 24 NY3d 1088 [2014]; People v Dean, 28 AD3d 1118, 1119 [4th Dept 2006], lv denied 7 NY3d 787 [2006]).
Defendant further contends that the court erred in admitting in evidence his arrest photograph. We reject that contention. It is well settled that "[a]n arrest photograph may be admitted into evidence in order to establish that a defendant's appearance was different at the time of the commission of the crime than at trial" (People v Grady, 204 AD3d 1524, 1524 [4th Dept 2022], lv denied 38 NY3d 1134 [2022] [internal quotation marks omitted]). The court must weigh the probative value of the evidence against its prejudice to defendant (see People v Buskey, 13 AD3d 1058, 1059 [4th Dept 2004]). Here, defendant's appearance had changed in the several months between his arrest and trial inasmuch as, at the time of the crime, defendant had a mustache and goatee and his hair was longer. We conclude that the court "properly admitted the photograph in evidence to show defendant's appearance at the time of the crime" (Grady, 204 AD3d at 1525).
Defendant also contends that the court erred in admitting in evidence a compilation video of surveillance footage inasmuch as it lacked a proper foundation and the time stamps of the original videos that were used to create the compilation did not align. "The decision to admit or exclude videotape evidence generally rests, to be sure, within a trial court's founded discretion" [*2](People v Patterson, 93 NY2d 80, 84 [1999]). "Similar to a photograph, a videotape may be authenticated by the testimony of a witness to the recorded events or of an operator or installer or maintainer of the equipment that the videotape accurately represents the subject matter depicted" (id.). Although the evidentiary foundation at the time the compilation video was entered into evidence was weak, any deficiency in that foundation was later remedied by the testimony of witnesses who confirmed the accuracy of the events depicted in the compilation. Accordingly, even assuming, arguendo, that the compilation video was improperly admitted before that later testimony, any such error was harmless (see People v Daniels, 36 AD3d 502, 503 [1st Dept 2007], lv denied 9 NY3d 842 [2007]; see generally People v Cannon, 236 AD2d 294, 294 [1st Dept 1997], lv denied 90 NY2d 902 [1997]) inasmuch as the evidence of defendant's guilt is overwhelming and there is no significant probability that the jury would have acquitted defendant but for the court's error (see People v Lawrence, 141 AD3d 1079, 1083 [4th Dept 2016], lv denied 28 NY3d 1029 [2016]). Additionally, although defendant is correct that the time stamps in the video footage used for the compilation video did not match each other, that discrepancy went to the weight of the evidence and not its admissibility (see People v Sanders, 185 AD3d 1280, 1283 [3d Dept 2020], lv denied 35 NY3d 1115 [2020]; People v Yanez, 180 AD3d 816, 816 [2d Dept 2020], lv denied 38 NY3d 931 [2022], reconsideration denied 38 NY3d 1075 [2022]).
Defendant next contends that the photo array was unduly suggestive and that the court erred in admitting in evidence any identification based on it. We disagree. Contrary to defendant's contention, this is not a case where the suspect was the only one wearing distinctive clothing identified by witnesses to the crime (cf. People v Owens, 74 NY2d 677, 678 [1989]); rather, defendant and one other individual included in the array were wearing a black hooded sweatshirt, which is "a 'generic and common article of clothing' " (People v McBride, 14 NY3d 440, 448 [2010], cert denied 562 US 931 [2010]; see People v Williams, 177 AD3d 536, 536 [1st Dept 2019], lv denied 34 NY3d 1164 [2020]).
Defendant further contends that the court erred in admitting the surveillance video footage in evidence because the initial identifications of defendant by police officers as the person seen in the video footage were based on secondhand or hearsay information from fellow officers. We disagree. After the Rodriguez hearing, the court ruled that the identifications of defendant by two officers were confirmatory, based upon their extensive prior contacts with defendant. Inasmuch as the court's findings are supported by the record, they should not be disturbed (see People v Allen, 231 AD2d 900, 901 [4th Dept 1996], lv denied 89 NY2d 918 [1996]; see generally People v Abrams, 100 AD3d 1458, 1459 [4th Dept 2012]). Contrary to defendant's related contention, a Wade-type hearing was unnecessary (see People v Williams, 128 AD3d 1522, 1523-1524 [4th Dept 2015], lv denied 25 NY3d 1209 [2015]). Similarly, the People were not required to provide CPL 710.30 notice with respect to the officers' identifications (see People v Boyer, 6 NY3d 427, 431-432 [2006]).
Nor did the court err in permitting the witnesses to testify to defendant's presence in the video footage. "A lay witness may give an opinion concerning the identity of a person depicted in a surveillance [video] if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the [video] than is the jury" (People v Harlow, 195 AD3d 1505, 1507 [4th Dept 2021], lv denied 37 NY3d 1027 [2021] [internal quotation marks omitted]; see People v Brown, 145 AD3d 1549, 1549 [4th Dept 2016], lv denied 29 NY3d 947 [2017]; cf. People v Oquendo, 152 AD3d 1220, 1221 [4th Dept 2017], lv denied 30 NY3d 982 [2017]). Here, the officer was more likely to correctly identify defendant from the video based upon his prior 30 to 50 interactions with defendant (see People v Griffin, 203 AD3d 1608, 1612 [4th Dept 2022], lv denied 38 NY3d 1008 [2022]). Similarly, the two people who were in the vehicle that was shot at had previously observed defendant in the vicinity of the shooting, and therefore were more likely to identify him correctly in the video than the jury was.
Defendant next contends that the court erred in giving an expanded jury charge on the issue of intent and in denying his request for a circumstantial evidence charge. We reject those contentions. In instructing the jury on intent, the court provided almost verbatim the expanded charge set forth in the Criminal Jury Instructions (see CJI2d[NY] Expanded Charge on Intent, https://www.nycourts.gov/judges/ cji/1-General/CJI2d.Intent.pdf [last accessed June 28, 2023]). The court's language did not improperly shift the burden of proof to defendant (see Sandstrom v Montana, 442 US 510, 524 [1979]) but "merely described a permissive inference" (People v [*3]Shutter, 163 AD2d 871, 871 [4th Dept 1990]). We further conclude that defendant was not entitled to a charge on circumstantial evidence, inasmuch as the proof at trial regarding the identity of the perpetrator was not entirely circumstantial (cf. People v James, 147 AD3d 1211, 1212-1214 [3d Dept 2017], lv denied 29 NY3d 1128 [2017]; see generally People v Bretagna, 298 NY 323, 325-326 [1949], cert denied 336 US 919 [1949], reh denied 336 US 922 [1949]; People v Duffy, 124 AD2d 258, 260 [3d Dept 1986], lv denied 69 NY2d 710 [1986]).
Defendant also contends that the court erred in denying his
pro se motion pursuant to CPL 330.30, which was adopted and supplemented by defendant's new counsel in an affirmation, and which was largely based on the alleged ineffectiveness of defendant's trial counsel for failing to call as a witness the owner of the vehicle that was shot at. We disagree. Here, the record supports the conclusion that defense counsel's decision not to call the owner was a matter of trial strategy and therefore does not constitute ineffective assistance of counsel (see People v Bermudez, 38 AD3d 1325, 1326 [4th Dept 2007], lv denied 9 NY3d 840 [2007]). We note that, in order to elicit testimony from the vehicle owner that was allegedly favorable to defendant, defense counsel would have to impeach the owner's credibility by having her repudiate a statement to the police that she had signed (see People v Lewis-Bush, 204 AD3d 1424, 1426 [4th Dept 2022], lv denied 38 NY3d 1072 [2022]). Further, defendant's allegation of ineffective assistance was based entirely on hearsay and, therefore, the moving papers did not "contain sworn allegations of all facts essential to support the motion" (CPL 330.40 [2] [e] [ii]; see People v Porter, 184 AD3d 1014, 1018 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]). To the extent that defendant's CPL 330.30 motion contained additional grounds, we deem those contentions abandoned inasmuch as defendant has failed to brief any specific arguments with respect thereto on appeal (see People v Butler, 2 AD3d 1457, 1458 [4th Dept 2003], lv denied 3 NY3d 637 [2004]).
To the extent that defendant's contention that prosecutorial misconduct on summation deprived him of a fair trial is preserved (see CPL 470.05 [2]), we conclude that any improprieties were not so egregious as to deprive defendant of a fair trial (see People v Boyd, 31 NY3d 953, 955 [2018]; People v Conley, 192 AD3d 1616, 1621 [4th Dept 2021], lv denied 37 NY3d 1026 [2021]).
The sentence is not unduly harsh or severe. We have considered defendant's remaining contentions and conclude that they lack merit.
Entered: July 28, 2023
Ann Dillon Flynn
Clerk of the Court