People v Duran (2025 NY Slip Op 03434)

People v Duran

2025 NY Slip Op 03434

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., MONTOUR, SMITH, DELCONTE, AND HANNAH, JJ.

258 KA 20-01350

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DELVERN DURAN, DEFENDANT-APPELLANT. 

SARAH S. HOLT, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (AERON SCHWALLIE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Victoria M. Argento, J.), rendered May 16, 2019. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him, following a joint jury trial with a codefendant, of robbery in the first degree (Penal Law § 160.15 [4]). The conviction arises from allegations regarding defendant's participation in the forcible stealing of property from the victim during an incident in which the codefendant shot the victim. Defendant contends, initially, that the evidence is legally insufficient to establish his liability as an accessory. We reject that contention. Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]), we conclude that there is a valid line of reasoning and permissible inferences to support the conclusion that defendant had "a shared intent, or 'community of purpose' with the principal," in carrying out the crime of robbery in the first degree, and that defendant " 'intentionally aided the principal in bringing forth the result' " (People v Carpenter, 138 AD3d 1130, 1131 [2d Dept 2016], lv denied 28 NY3d 928 [2016]; see People v Gause, 230 AD3d 1573, 1574-1575 [4th Dept 2024], lv denied 43 NY3d 930 [2025]; see generally Penal Law §§ 20.00, 160.15 [4]). Here, it is reasonable to infer, based on the witness testimony and video evidence admitted at trial, that defendant was acting as a lookout for the codefendant and that, while the codefendant was going through the victim's pockets, defendant attempted to obstruct the view of a passing police vehicle (see People v Carr-El, 287 AD2d 731, 733 [2d Dept 2001], affd 99 NY2d 546 [2002]; People v Coulter, 240 AD2d 756, 757 [2d Dept 1997], lv denied 91 NY2d 871 [1997]; People v Wooten, 214 AD2d 596, 596 [2d Dept 1995]). Additionally, after the codefendant went through the victim's pockets, both defendant and the codefendant walked away from the victim together, which "is further evidence of [defendant's] complicity in the crime" (People v McDonald, 257 AD2d 695, 696 [3d Dept 1999], lv denied 93 NY2d 876 [1999]; see People v Bacote, 107 AD3d 641, 642 [1st Dept 2013], lv denied 21 NY3d 1072 [2013]; see generally People v Roldan, 88 NY2d 826, 827 [1996]).
Defendant further contends that there is legally insufficient evidence establishing that property was stolen from the victim. We reject that contention. The video evidence showed the codefendant rifling through the victim's pockets, after which the codefendant placed something in his own back pocket and then threw an object near defendant from the direction of the victim, and police testimony established that the victim's wallet was found in the location of the object thrown by the codefendant. Contrary to defendant's contention, we conclude that there is legally sufficient evidence establishing that the codefendant took personal property from the victim (see People v Clark, 159 AD2d 629, 629-630 [2d Dept 1990], lv denied 76 NY2d 732 [1990]; see [*2]generally People v Griffin, 203 AD3d 1608, 1610 [4th Dept 2022], lv denied 38 NY3d 1008 [2022]).
Contrary to defendant's further contention, upon viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see People v Griffin, 145 AD3d 1551, 1552 [4th Dept 2016]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Defendant next contends that the prosecutor's exercise of peremptory challenges with respect to three prospective jurors of color constituted a Batson violation because the People failed to offer race-neutral explanations for those challenges. Initially, the issue whether defendant established a prima facie case of discrimination at step one of the Batson inquiry was rendered moot by County Court's ruling "on the ultimate question of intentional discrimination" (People v Payne, 88 NY2d 172, 182 [1996] [internal quotation marks omitted]; see People v Douglas, 203 AD3d 1682, 1683 [4th Dept 2022]). Defendant's contention on appeal is limited to step two of the Batson inquiry, which requires the nonmoving party "to offer a facially neutral explanation for each suspect challenge" (People v Hecker, 15 NY3d 625, 634 [2010], cert denied 563 US 947 [2011]; see People v Allen, 86 NY2d 101, 109 [1995]). That burden "is minimal, and the explanation must be upheld if it is based on something other than the juror's race, gender, or other protected characteristic" (People v Bullock, 213 AD3d 1351, 1352 [4th Dept 2023], lv denied 40 NY3d 933 [2023] [internal quotation marks omitted]; see People v Smouse, 160 AD3d 1353, 1355 [4th Dept 2018]). Here, with respect to the challenges to the prospective jurors in question who were on the first and third panels, the People's explanations were based on the demeanor of those prospective jurors. Those explanations were thus "facially race-neutral" (People v Cruz, 228 AD3d 1019, 1023 [3d Dept 2024]; see People v Wells, 7 NY3d 51, 58 [2006]; People v Acevedo, 141 AD3d 843, 846 [3d Dept 2016]). Furthermore, the challenge to the prospective juror in question on the second panel also had a race-neutral explanation; the prosecutor explained that the challenge was based on the prospective juror's vision problems, which the People were concerned would affect her ability to watch the video evidence that was a critical part of the People's case (see People v Page, 105 AD3d 1380, 1381 [4th Dept 2013], lv denied 23 NY3d 1023 [2014]).
Finally, the sentence is not unduly harsh or severe.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court